No. 13555

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

MONTANA ASSOCIATION OF UNDERWRITERS,

Plaintiff and Appellant,

-vs-

STATE OF MONTANA, acting by and through the
Department of Administration, and Montana
Benefits, Inc.,

Defendants and Respondents.

---

Appeal from:  District Court of the First Judicial District,
Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Philip W. Strope argued, Helena, Montana

For Respondent:

Small, Cummins and Hatch, Helena, Montana
Robert Cummins argued, Helena, Montana
Michael Young argued, Helena, Montana

---

Submitted:  March 17, 1977

Decided: APR 29 1977

Filed: APR 29 1977

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiff filed an action for declaratory judgment and injunctive relief against the State Department of Administration and a private corporation to block implementation of a deferred compensation plan for public employees. The district court, Lewis and Clark County, the Hon. Gordon R. Bennett, district judge, granted summary judgment to defendants denying the requested relief. Plaintiff appeals.

Plaintiff is the Montana Association of Life Underwriters, a trade association whose members are involved, among other things, in the field of employee pension plans. There are two defendants: The Department of Administration (DOA), an administrative agency of the state of Montana; and Montana Benefits, Inc. (MFI), a private profit corporation, which is engaged in establishing and administering the deferred compensation plan for public employees.

In 1974 the Montana legislature enacted legislation authorizing public employees to enter into a deferred compensation plan. Chapter 264, 1974 Session Laws, codified as sections 68-2701 through 68-2709, R.C.M. 1947. Essentially the legislation authorized the state or its political subdivisions, after reaching agreement with its employees, to enter into a program whereby its employees could defer a portion of their pay in a qualified deferred compensation plan under the federal Internal Revenue Code. Under such a plan the employee would not pay income taxes on the portion of his salary deferred until it was finally distributed to him under the plan. The state or its political subdivision incurred no financial liability for losses incurred by

any plan established under the legislation. DOA was authorized to contract with employees to defer compensation under any qualified plan, to establish rules and regulations for the proper operation of the plan, and to contract with private corporations or institutions for consolidated billing and other administrative services.

Pursuant to this legislation, DOA entered into a written agreement on September 17, 1975 with Montana Public Employees Benefit Services Co., Inc., the predecessor of MBI, wherein the corporation was given the exclusive right to establish and administer a plan of deferred compensation for public employees. On the same date DOA entered into a written agreement with MBI wherein this corporation was granted the same exclusive right. At the time of contracting Montana Public Employees Benefit Services Co., Inc. was not yet incorporated. Following incorporation, that corporation's name was changed to MBI. After the present suit was filed, DOA entered into a third contract with MBI identical to the previous contracts.

The deferred compensation plan was prepared and offered by the corporation to the state, which adopted it. This plan had been approved as a "nonqualified unfunded" plan by the Internal Revenue Service in a private letter ruling. This ruling determined that income deferred by public employees under the plan was not includable in the employee's gross income until actually received by the employee or his beneficiaries, provided state law permits implementation of the plan.

Plaintiff challenges the deferred compensation plan adopted by the state on three grounds, which we are asked to review on appeal:

(1) Whether the 1974 legislation requires the state to adopt and implement only a "qualified' funded deferred compensation plan within the meaning of §401(a), Internal Revenue Code 1954, as amended.

(2) Whether the agreement between DOA and MBI is void for lack of legal capacity by MBI to contract.

(3) Whether DOA has authority to grant an exclusive contract to MBI.

The gist of the first issue is whether the legislature in using the words "qualified plan" and similar language meant a plan qualified for deferred income tax liability or whether it referred to a qualified deferred compensation plan within the meaning of §401(a), Internal Revenue Code 1954.

Plaintiff argues that the words "qualified" and "non-qualified" are words of art with distinct meanings, when used within the context of the Internal Revenue Code. It argues the Montana legislature used the words "qualified plan" in that sense in the deferred compensation act to provide adequate funding and security of employee contributions from diversion to other purposes. Therefore, it contends, the legislature meant a qualified plan under §401(a), Internal Revenue Code 1954 which insures adequate funding, security, and prevents diversion of funds to other purposes.

At the outset we note the legislation in question provides in pertinent part:

"68-2701.  Deferred compensation programs permitted.

"The state * * * may establish, after reaching agreement with any employee * * * a program for employees to defer any portion of that employee's compensation up to the maximum allowed by the Internal Revenue Code in a plan qualified for exemption under applicable sections of the Internal Revenue Code." (Emphasis added.)

- 4 -

In subsequent sections reference is made to "any qualified plan" (section 68-2702), to "qualified plans" (section 68-2705), to "any qualified private pension plans" (section 68-2706), and to "all qualified deferred compensation plans" (section 68-2708).

A cardinal principle of statutory construction is that the intent of the legislature must first be determined from the plain meaning of the words used, and if interpretation of the statute can be so determined, the courts may not go further and apply any other means of interpretation. Keller v. Smith,_____ Mont._____, 553 P.2d 1002, 33 St.Rep. 828; Dunphy v. Anaconda Co., 151 Mont. 76, 438 P.2d 660, and cases cited therein.

Here the language of the act clearly indicates the term "qualified plan" means a plan qualifying for deferral of income taxation under federal laws. Section 68-2701 authorizes a deferred compensation program for public employees "in a plan qualified for exemption under applicable sections of the Internal Revenue Code." This language demonstrates the underlying purpose of the act -- tax saving by exemption under federal tax laws. The exemption is not limited to a plan qualified under §401(a) of the Internal Revenue Code or any other specific section thereof. The act says a plan qualified for exemption "under applicable sections of the Internal Revenue Code." It does not speak of "funded" or "unfunded" plans, §401(a) plans, or use the technical jargon of the Internal Revenue Code.

Where the language of a statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe. Keller v. Smith, supra; Dunphy v. Anaconda Co., supra. Our function is simply to declare what is contained in the statute, and neither insert what has been omitted

- 5 -

nor omit what has been inserted. Section 93-401-15, R.C.M. 1947; Clark v. Hensel Phelps Construction Co., _____Mont._____, _____P.2d _____, 34 St.Rep.61; Hammill v. Young, ____Mont._____, 540 P.2d 971, 32 St.Rep. 935. Accordingly, we will not construe the language of section 68-2701 - "in a plan qualified for exemption under applicable sections of the Internal Revenue Code" --- to mean only a §401(a) plan.

Plaintiff argues the deferred compensation plan in question does not conform to Montana's statutory requirements because it is "unfunded" and does not provide the necessary security for employee contributions. It is contended that a qualified, funded §401(a) plan provides such security, and the legislature intended to provide such security by using the term "qualified plan" as words of art having a special meaning in the context of the Internal Revenue Code, specifically a §401(a) qualified and funded plan. Plaintiff asserts the deferred compensation plan in question does not qualify for exemption under §401(a) of the Internal Revenue Code and cites in support Buttrey Stores, Inc. v. United States, 375 F.2d 799, and Trebotich v. Commissioner of Internal Revenue, 492 F.2d 1018.

We agree that the deferred compensation plan in question does not qualify for exemption under §401(a) of the Internal Revenue Code. A qualified plan under that section is a specialized, highly sophisticated, and complex income deferral plan utilizing the trust device to insure security and non-diversion of deferred income contributions. The merits of such a plan vis-a-vis the unfunded plan here is a policy determination to be resolved by the legislature and DOA. The legislature has not limited a

"qualified plan" to a §401(a) plan by the plain language of its enactment and DOA has approved the particular plan involved in this case.

We have considered the other arguments advanced by plaintiff on the first issue and find that none would change our holding. We find it unnecessary to go beyond the plain language of Montana's act. We specifically hold this language permits implementation of the deferred compensation plan involved in this case.

Plaintiff's second issue argues that the contract entered into between the state and MBI is void as MBI lacked legal capacity to enter into such agreement. At the time of the execution of the initial contract between DOA and the predecessor of MBI on September 17, 1975, no certificate of incorporation had been issued to the corporation. 21 days later on October 8, 1975, the corporation received its articles of incorporation. The company name was later changed to MBI at the request of the secretary of state and articles of incorporation were issued in that name on April 12, 1976.

MBI was, in effect, a defacto corporation at the time the contract in question was executed. Although it was defective in its creation and not a de jure corporation, this was the result of a bona fide attempt to incorporate under the existing statutory authority, coupled with the exercise of corporate powers. A de facto corporation has the same capacity to contract as a de jure corporation. Proof of a de facto corporate existence is sufficient where the validity of a contract by a body of men claiming to be a corporation is in issue in a suit which is between third persons. 8 Fletcher Cyc. Corp. (Perm.Ed.), Chap. 45, §3862, and cases cited therein.

- 7 -

Plaintiff argues the contract was not merely voidable, but void ab initio as a result of the failure of to comply with the technical requirements of incorporation. We do not agree.

The legal distinction between "void" and "voidable" contracts is defined in 1 Williston on Contracts, 3rd Ed., §15:

> "An agreement which produces no legal obligation is frequently called a 'void' contract. Though the phrase is often convenient, it is a contradiction in terms. If an agreement is void it is not a contract. A voidable contract, however, is common in the law. Infancy, fraud, mistake, duress, some kinds of illegality, all afford ground for rescinding or refusing to perform a contract. Unless rescinded, however, a voidable contract imposes on the parties the same obligations as if it were not voidable. The term is used to cover both cases where the person having the power of avoidance must promptly take action manifesting his election and cases where he need do nothing unless sued, and may then assert avoidance as a defense. Where a contract is voidable on both sides, as where both are infants or cheats, the transaction is not wholly void, since in order to prevent the contract from having its normal operation the defense must in some manner be asserted, and furthermore, since the contract is capable of ratification, it affects from the outset the legal relations of the parties."

In the instant case, the failure of the corporation to possess articles of incorporation until 21 days after the execution of the contract with the state does not constitute an illegal purpose which would void the agreement from its inception. On the contrary, this defect rendered the contract voidable at the state's option. The state not only has not taken any steps to void or rescind the contract, but in fact has ratified it.

The third and final issue is whether DOA has authority to grant an exclusive contract to MBI. The record discloses that this issue was not researched, briefed, argued or raised before the district court. On appeal this Court will not review issues not presented to the trial court. Spencer v. Robertson, 151 Mont.

507, 445 P.2d 48; Clark v. Worrall, 146 Mont. 374, 406 P.2d 822; State Highway Commission v. Yost Farm Company, 142 Mont.239, 384 P.2d 277.

The summary judgment of the district court is affirmed.

_____
                    Justice

We Concur:

_____
     Chief Justice

_____

_____

_____
     Justices.