NO.   94-067

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

JACK MURER, JAY HARBRIGE,
KEITH MORDJA, SUSAN VERNON,
BRUCE NELSON, STEVE PRICKETT,
and JAMES BROWN,
          Claimants/Co-Appellants,

-v-

STATE COMPENSATION MUTUAL
INSURANCE FUND,
          Defendant/Co-Respondent,

and

LARRY MACK and WILLIAM LOGAN,
          Claimants/Co-Appellants,

-v-

ASARCO,  INCORPORATED,
          Defendant/Co-Respondent.


APPEAL FROM:   Workers' Compensation Court
               The Honorable Gordon Bennett, Judge presiding.


COUNSEL OF RECORD:

          For Appellant:

               Allan M. McGarvey, McGarvey, Heberling, Sullivan &
               McGarvey, Kalispell, Montana

          For Respondent:

               Bradley L. Luck, Garlington, Lohn & Robinson,
               Missoula, Montana

Submitted on Briefs:   August 11, 1994

Decided:   November 21, 1994

Filed:   NOV 21 1994

FILED

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from a Workers' Compensation Court order granting the defendants/respondents summary judgment and its order denying plaintiffs/appellants partial summary judgment. We reverse and remand for a calculation of benefits consistent with this opinion.

The issue on appeal is whether the District Court erred in granting summary judgment to the defendants/respondents and denying the partial summary judgment motion of the plaintiffs/appellants. The underlying issue is whether the statutes at issue which set the maximum rate for workers' compensation benefits at $299 for the periods from July 1, 1987 through June 30, 1991, were temporary or were permanent caps on benefit rates.

FACTUAL AND PROCEDURAL BACKGROUND

Appellants are Montana workers who were injured in accidents occurring within the scope and course of their employment between July 1, 1987, and June 30, 1991, and who were paid disability benefits at a maximum benefit rate of $299 per week. Appellants' maximum benefit rate of $299 per week was computed pursuant to § 39-71-701, MCA (1987) and (1989) which provided, in pertinent part:

> (3) Weekly compensation benefits for injury producing temporary total disability shall be 66 2/3% of the wages received at the time of the injury. The maximum weekly compensation benefits shall not exceed the state's average weekly wage at the time of injury.
> . . .
>
> (5) Notwithstanding subsection (3), beginning July 1, 1987, through June 30, 1989 [1991], weekly compensation benefits for [permanent or temporary] total disability may not exceed the state's average weekly wage of $299

2

established July 1, 1986.

Section 39-71-701(3) and (5), MCA (1987).

Subsection (5) of § 39-71-701, MCA, was initially added to the statute in 1987. In 1989, subsection (5) was again amended to extend the $299 cap on benefits to June 30, 1991. In both 1987 and 1989, substantially the same language was added to §§ 39-71-702(6), 39-71-703(3), 39-71-721(8), and 39-71-1024(3), and our decision here applies to those statutes as well. Under the statutory scheme as amended, payments for partial disability were not to exceed $149.50, which was one-half the state's average weekly wage established July 1, 1986. See § 39-71-703(3).

Section 39-71-701(5), MCA (1987), placed an arbitrary "cap" or limit on the benefits payable to injured workers, as an exception to the regular benefit rate provided for at § 39-71-701(3), MCA (1987)--i.e. 66 2/3% of the workers' wages at the time of injury, not to exceed the state's average weekly wage. The cap provided for at subsection (5) pertained to benefits awarded to workers injured between July 1, 1987 and June 30, 1991. During that same period--July 1, 1987 through June 30, 1991--the state's average weekly wage established by the Department of Labor ranged from $302 to $349, or, in other words, from $3 to $50 higher than the capped maximum benefit rate of $299.

The question presented is whether the cap terminated after June 30, 1991, as to benefits awarded during the time that the cap was in effect or whether such benefits continued to be limited to a maximum of $299 following after that date. Appellants contend

3

that the cap was only temporary and that, under the terms of the statute, the cap terminated after June 30, 1991, with the result that, after that date, the maximum rate for workers' compensation benefits returned to the higher time of injury state's average weekly wage under § 39-71-701(3), MCA. The insurers, on the other hand, maintain that, once benefits were awarded under the capped rate, those benefits, as limited, continued on past 1991 as the injured workers' permanent time of injury maximum rate.

Appellants filed their petition on June 25, 1992, seeking to have their action filed as a class action suit but the Workers' Compensation Court denied class certification. That denial was affirmed by this Court in Murer v. State Comp. Mut. Ins. Fund (1993), 257 Mont. 434, 849 P.2d 1036.

Appellants then brought their motion for partial summary judgment, filed on June 1, 1993, and on July 12, 1993, the respondents filed their motion for summary judgment. The Workers' Compensation Court filed its order and memorandum on January 11, 1994, denying appellants' motion for partial summary judgment and granting respondents' motion for summary judgment. This appeal followed.

## STANDARD OF REVIEW

The standard of review for an appeal from a Workers' Compensation Court's grant or denial of a motion for summary judgment is the same as that used by a district court. Lund v. State Compensation Mut. Ins. Fund (1994), 263 Mont. 346, 348, 868 P.2d 611, 612. "We determine whether there is an absence of

4

genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Lund, 868 P.2d at 612. The material facts in the instant case are not at issue; the resolution of the question presented in this case hinges upon the proper legal interpretation of the §§ 39-71-701(5), MCA, 1987 and 1989. Our review of the conclusions of law of the Workers' Compensation Court is plenary; we simply determine whether its legal conclusions are correct. Lund, 868 P.2d at 612.

### DISCUSSION

While we have considered the various arguments raised by the parties to this appeal, we need go no further than to apply the well established rules of construction set forth in our statutes and case law. In construing a statute, this Court must "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Section 1-2-101, MCA. Moreover, "[a] cardinal principle of statutory construction is that the intent of the legislature must first be determined from the plain meaning of the words used, and if interpretation of the statute can be so determined, the courts may not go further and apply any other means of interpretation. Mont. Ass'n of Underwriters v. State, Etc. (1977), 172 Mont. 211, 215, 563 P.2d 577, 579-80. (Citations omitted.) We conclude that the statute at issue here, § 39-71-701(5), MCA (1987) and (1989), is clear and unambiguous and that, from the plain meaning of the

5

language used by the legislature, the limitation on benefit payments of $299 (or $149.50 for partial benefits) per week was intended to be a temporary cap and not a permanent one.

While we decline to speculate on the language that the legislature <u>could</u> have used to make the $299 cap permanent, one thing is clear. Had the legislature intended to impose a permanent cap on benefits awarded to injured workers during the period July 1, 1987 through June 30, 1989, and again during the period July 1, 1989 through June 30, 1991, it could have easily included language in subsection (5) to accomplish that. Instead, the language chosen merely sets forth a time-specific limitation on benefits--i.e. that notwithstanding the higher benefit rate to which the injured worker would normally be entitled under subsection (3) of § 39-71-701, MCA, beginning July 1, 1987 through June 30, 1991, those benefits were capped at an amount not to exceed $299. There is simply no language in the statute that would lead to the conclusion that the benefit cap was to apply to any time period after June 30, 1991, and it is improper to interpret the statute to insert such a provision where the legislature failed to do so.

The language used by the legislature, "beginning July 1 1987, through June 30, 1991 . . . benefits . . . may not exceed . . . $299," clearly limits the amount and timing of <u>benefit</u> payments. The statutory language does not, contrary to the insurers' arguments, delineate the dates of injury or dates of the workers' claims to which a "time of injury" compensation rate is permanently fixed at $299. Moreover, as pointed out above, had it been the

legislature's intention to establish a permanent time of injury benefit at the capped amount, the statute could have been written to accomplish that result. It was not, and we decline to interpret the statute in that fashion.

While the Workers' Compensation Court attempted to divine "what the legislature was trying to do," in capping the benefit rate at $299 during the time periods in question, it is improper and violative of the rules of statutory construction set forth above to go beyond the plain language of the statute when the legislature's intent can be derived from the objective meaning of the words used. Montana Underwriters, 563 P.2d at 579-580.

If the cap of $299 was intended to be a permanent cap, the legislature would have so stated, and would not have provided for a time limitation for the cap to remain in effect. To interpret the statute as providing for a permanent cap on benefits of $299 would necessitate inserting thatwhichthe legislature omitted from the statute in its enactment of the amendment. Section 1-2-101, MCA. As asserted by the appellants, "[s]imply stated, the statute provides that benefits may not exceed $299.00 per week from July 1, 1987 through June 30, 1991."

At the expiration of the time limitation provided for in § 39-71-701(5), MCA (1989), the statutory provision that the maximum benefit rate for workers is set at the state's average weekly wage at the time of the injury governs. Section 39-71-701(3), MCA.

Respondents argue that the rate in effect at the time of injury controls throughout the life of a claim and that the

appropriate rate in the instant case for workers injured from July 1, 1987 through June 30, 1991 is $299.00 for the duration of their claims. They contend that if the appellants' argument is accepted, a maximum benefit: rate claim would increase whenever the state's average weekly wage would increase. The weekly compensation benefit rate is fixed at the time of injury; and the time of injury benefit rate during the time period in question is $299.

We agree that an injured worker's weekly compensation benefit rate is fixed at the time of injury. Stuber v. Moodie Implement (1989), 236 Mont. 189, 192, 769 P.2d 1205, 1207. It is also well established that a claimant's worker's compensation benefits are determined by the statutes in effect at the time of injury. Buckman v. Montana Deaconess Hosp. (1986), 224 Mont. 318, 322, 730 P.2d 380, 382.

However, the appellants* argument is also in accord with those legal precepts. Appellants argue, and we agree, that subsection (5) of § 39-71-701, MCA, for the years 1987 and 1989, was a temporary, time-specific limitation and that when the limitation expired, the claimants should then have been paid maximum benefit rates not to exceed the state's average weekly wage rate <u>at the time of the iniurv</u> under § 39-71-701(3), MCA. In actuality, appellants ask for no more than they are granted by statute--that they receive benefits at 66 2/3% of their wages received at the time of injury with the maximum weekly compensation benefits not to exceed the state's average weekly wage at the time of injury. Section 39-71-701(3), MCA.

From our reading of the plain, objective language of the statute, we conclude that this is precisely what the appellants should receive. We hold that the "cap" on benefits, of $299.00, set by the 1987 and 1989 legislatures in § 39-71-701(5), MCA, was a temporary cap on benefits which terminated on June 30, 1991, and that on that date the appellants should have begun receiving benefits under § 39-71-701(3), MCA, at the statutory rate determined as of the date of injury--i.e. "[w]eekly compensation benefits. . . [of] . . . 66 2/3% of the wages received at the time of the injury . . . not [to] exceed the state's average weekly wage at the time of injury." Section 39-71-701(3), MCA. We hold that the Workers' Compensation Court erred in granting summary judgment to the defendants/respondents and denying partial summary judgment to the plaintiffs/appellants, and, accordingly, we reverse and remand for a calculation of benefits consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

November 21. 1994

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following   named:


Allan M. McGarvey
McGARVEY, HEBERLING, SULLIVAN & McGARVEY
745 So. Main Street
Kalispell, MT 59901

Bradley L. Luck
GARLINGTON, LOHN & ROBINSON
P. 0. Box 7909
Missoula, MT 59807-7909

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy