No. 95-542
IN THE SUPREME COURT OF THE STATE OF MONTANA
1997


JACK MURER, JAY HARBRIGE, KEITH MORDJA, SUSAN VERNON,
BRUCE NELSON, STEVE PRICKETT, and JAMES BROWN,

      Claimants & Appellants,

    v.

STATE COMPENSATION MUTUAL INSURANCE FUND,

      Defendant, Respondent & Cross-Appellant,

    and

BEVERLY HARDY, et.al.,

      Intervenors & Respondents.



APPEAL FROM:   Workers' Compensation Court, State of Montana,
             The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          James H. Goetz (argued); Goetz, Madden & Dunn; Bozeman,
          Montana; and Allan M. McGarvey; McGarvey, Heberling,
          Sullivan & McGarvey; Kalispell, Montana

      For Respondent:

          Bradley J. Luck (argued) and Lucy T. France; Garlington,
          Lohn & Robinson; Missoula, Montana

      For Intervenors:

          Ira D. Eakin (argued); Lynaugh, Fitzgerald, Eiselein & Eakin;
          Billings, Montana


                       Submitted: February 18, 1997
                         Decided: June 23, 1997

Filed:

—————————————————————————————————

Clerk Justice Terry N. Trieweiler delivered the opinion of the Court.

The claimants, Jack Murer, Jay Harbrige, Keith Mordja, Susan Vernon, Bruce Nelson, Steve Prickett, and James Brown, filed a petition for benefits in the Workers' Compensation Court for the State of Montana.  On November 20, 1995, the Workers' Compensation Court entered its final judgment granting in part and denying in part the benefits and fees which were sought.  Claimants appeal and the respondent, State Compensation Mutual Insurance Fund, cross-appeals.  We affirm in part and reverse in part the judgment of the Workers' Compensation Court, and remand to that court for further proceedings consistent with this opinion.

On appeal, claimants raise the following issues:

1.    Did the Workers' Compensation Court err when it concluded that the temporary cap on maximum benefits enacted in 1987 did not expire until June 30, 1991?

2.    Did the Workers' Compensation Court err when it concluded that the settlement agreements entered into between claimants and the State Fund foreclose claimants' rights to further benefits?

3.    Did the Workers' Compensation Court err when it denied claimants' motion for attorney fees pursuant to the common fund doctrine?

On cross-appeal, the State Fund raises the following issues:

1.    Did the Workers' Compensation Court err when it concluded that an impairment award, paid in the form of a lump sum before June 30, 1991, at the request of claimant Keith Mordja, must be increased pursuant to Murer II ?

2.    Did the Workers' Compensation Court err when it determined that the State Fund's failure to increase Mordja's impairment award was unreasonable and, on that basis, assessed a penalty pursuant to   39-71-2907, MCA?

FACTUAL BACKGROUND

In 1987, the Montana Legislature enacted the following cap on temporary total disability benefits for injured workers:

[B]eginning July 1, 1987, through June 30, 1989, weekly compensation benefits for temporary total disability may not exceed the state's average weekly wage of $299 established July 1, 1986.

Section 39-71-701(5), MCA (1987).  See also   39-71-702(6), MCA (1987) (permanent total disability), and   39-71-703(3), MCA (1987) (permanent partial disability).  The 1989 Legislature enacted similar caps for injuries which occurred between July 17, 1989, and June 30, 1991.  Those caps extended "through June 30, 1991."  See   39-71-701 (5), -702(6), and -703(3), MCA (1989).  The State Fund deemed the caps ($299 per week for total benefits; $149.50 per week for partial benefits) to be permanent and, on that basis, continued to apply them after June 30, 1991.

Claimants are seven workers who were injured between July 1, 1987, and June 30, 1991, and who are entitled to disability benefits at the maximum statutory rate.  They filed a petition in the Workers' Compensation Court in which they contended that the 1987 and 1989 legislative caps were temporary and, therefore, cannot be applied after 1991.  Furthermore, they asserted that: (1) the temporary cap enacted in 1987 expired

June 30, 1989, and did not apply thereafter to workers injured before that date; and (2)
the temporary cap enacted in 1989 can only be applied to injuries which occurred between July 17, 1989, and June 30, 1991.

Claimants initiated this litigation as representatives of a class of injured claimants similarly situated. However, the Workers' Compensation Court concluded that

a final judgment will have the same effect as a class action without the unnecessary complications. The Court is convinced that the regulatory agency (D.O.L.I.) and the supervision of the courts sufficiently protects all claimants . . . .

On that basis, the Workers' Compensation Court denied class certification and, on appeal, we affirmed. Murer v. State Fund (1993), 257 Mont. 434, 849 P.2d 1036 (Murer I).

On remand, the Workers' Compensation Court concluded that the 1987 and 1989 caps were permanent and that, therefore, the State Fund could continue to apply the caps after June 30, 1991. On appeal from that decision, we reversed the Workers' Compensation Court, held that the caps on disability benefits were only temporary, and remanded the case to the lower court for further proceedings. Murer v. State Fund (1994), 267 Mont. 516, 885 P.2d 428 (Murer II).

Pursuant to Murer II, the State Fund was obligated to increase benefit payments to a substantial number of claimants who were neither parties to, nor directly involved in the Murer litigation. For that reason, claimants again moved for class certification. The State Fund, however, agreed to contact and pay all absent claimants, without requiring further action on their behalf.

Under supervision of the Workers' Compensation Court, the State Fund identified and notified absent claimants, and disbursed to them the required increase in benefits. Claimants and their attorneys asserted a lien for fees against those increased payments. In recognition of that lien, the State Fund withheld 20 percent from the amounts paid to absent claimants. Claimants also moved the Workers' Compensation Court to award them attorney fees pursuant to the common fund doctrine.

On February 16, 1995, thirteen absent claimants, Beverly Hardy, et.al., filed a motion to intervene, which the Workers' Compensation Court granted. On August 7, 1995, the court denied claimants' motion and refused to award them attorney fees pursuant to the common fund doctrine.

Claimants continued to assert that workers' compensation claimants injured between 1987 and 1989 should be subject only to the 1987 cap, and that the 1989 cap applies only to claimants injured between 1989 and 1991. The Workers' Compensation Court, however, refused to differentiate between the two classes of injured workers and concluded that both the 1987 and the 1989 temporary caps expired June 30, 1991.

During the pendency of this litigation, four of the Claimants--Jay Harbrige, Susan Vernon, Steve Prickett, and James Brown--made settlement agreements with the State

Fund.  Each of the settlement agreements was executed on Form LF820, a standardized form which is published by the Department of Labor and Industry for purposes of lump sum conversions pursuant to  39-71-741(2), MCA.  Form LF820 contains the following caption:   PETITION FOR COMPROMISE
AND RELEASE SETTLEMENT
(Permanent Partial Wage Supplement
and/or Rehabilitation Benefits).

     Notwithstanding the parenthetical language to the caption, the operative provisions
of each agreement contain the following language:
        The parties to this matter have agreed to fully and finally conclude
     all compensation and/or rehabilitation payments due the claimant under the
     Workers' Compensation Act . . . .

          . . . .

        The claimant hereby petitions the Division of Workers'
     Compensation . . . for approval of this petition and that the claim be fully
     and finally closed on the basis set forth above.

     The Department of Labor and Industry approved each settlement petition, and its orders provide that the State Fund is "fully released and discharged from all further obligations for compensation benefits for this injury under the Workers' Compensation Act."  Those orders also indicate that any dissatisfied party can appeal the order to the
Workers' Compensation Court; however, no appeals were filed.
     Claimants' counsel selected and prepared these standardized settlement petitions (Form LF820), and then forwarded them to the State Fund for execution.  Claimants' counsel, however, did not use the additional spaces provided to insert any special provisions or to indicate the retention of any specific rights.
     Claimants maintained that there are ambiguities in the settlement petitions, and that
the contemporaneous correspondence between the parties reveal that they intended to settle only their wage supplement and rehabilitation entitlements.  The Workers' Compensation Court, however, concluded that the settlement petitions foreclose Claimants' rights to all further workers' compensation benefits, including their rights to
increased temporary total and impairment rating benefits.
     Claimant Keith Mordja was injured on January 17, 1988.  On June 14, 1990, it was determined that he had reached maximum healing and his physician evaluated his physical impairment at 30 percent.  On June 27, 1990, the State Fund notified him that
his impairment rating entitled him to 150 weeks of benefits, commencing June 14, 1990.
Thus, 54.57 weeks of benefits would accrue before July 1, 1991, and 95.43 weeks would accrue after July 1, 1991.  He elected to receive his impairment award in a lump sum and
received the balance of his award on July 10, 1990.  Pursuant to  39-71-703(1)(a)(iii),
MCA (1987), his lump sum award was reduced to present value.
     Pursuant to Murer II, the Workers' Compensation Court concluded that, with

regard to those benefits paid for the 95.43 weeks after July 1, 1991, Mordja was entitled
to an increase in his impairment award:

> The State Fund's refusal to pay the additional benefits was unreasonable. More than 95 weeks of the benefits were attributable to the time period after the temporary cap had expired. In paying the benefits in a lump sum the State Fund discounted the future benefits to present value (See 39-71-703(1)(a)(iii), MCA (1987)), thus acknowledging that the benefits were attributable to the later time. The matter was not reasonably debatable.

On that basis, the court assessed a 20 percent penalty in the amount of $191.32 pursuant
to 39-71-2907, MCA.

### STANDARD OF REVIEW

When we review the Workers' Compensation Court's conclusions of law, our standard of review is plenary and we must determine whether its conclusions are correct
as a matter of law. Lund v. State Fund (1994), 263 Mont. 346, 348, 868 P.2d 611, 612.

### ISSUE 1

Did the Workers' Compensation Court err when it concluded that the temporary cap on maximum benefits enacted in 1987 did not expire until June 30, 1991?

The Workers' Compensation Court concluded that the 1987 temporary cap on maximum benefits did not expire until June 30, 1991. The court based its conclusion on
the following language contained within Murer II:

> We hold that the "cap" on benefits, of $299.00, set by the 1987 and 1989 legislatures in 39-71-701(5), MCA, was a temporary cap on benefits which terminated on June 30, 1991, and that on that date the appellants should have begun receiving benefits under 39-71-701(3), MCA, at the statutory rate determined as of the date of injury . . . .

Murer II, 267 Mont. at 522, 885 P.2d at 432. While this isolated quote, by itself, arguably supports the Workers' Compensation Court's conclusion, a more thorough analysis of the entire Murer II opinion, and its rationale, reveals that Murer II does not
support the Workers' Compensation Court's conclusion.

In Murer II, we held that, pursuant to the plain, objective language of the relevant
statutes, the 1987 and 1989 caps on maximum benefits were only temporary and, therefore, that the State Fund could not continue to apply those caps after the dates on
which they expired. We reasoned as follows:

> Appellants argue, and we agree, that subsection (5) of 39-71-701, MCA, for the years 1987 and 1989, was a temporary, time-specific limitation and that when the limitation expired, the claimants should then have been paid maximum benefit rates not to exceed the state's average weekly wage rate at the time of the injury under 39-71-701(3), MCA.

Murer II, 267 Mont. at 522, 885 P.2d at 432. Accordingly, to the extent that any language in Murer II supports the Workers' Compensation Court's conclusion, we

clarify
that opinion today.

The 1987 law unequivocally provides that the temporary caps on maximum benefits expired June 30, 1989. "[B]eginning July 1, 1987, through June 30, 1989, weekly compensation benefits for temporary total disability may not exceed the state's average weekly wage of $299 established July 1, 1986."  Section 39-71-701(5), MCA (1987) (emphasis added).  See also   39-71-702(6), MCA (1987) (permanent total disability), and   39-71-703(3), MCA (1987) (permanent partial disability).

It is well established that the workers' compensation law in effect at the time of an injury governs the claim.  Chagnon v. Travelers Ins. Co. (1993), 259 Mont. 21, 25, 855 P.2d 1002, 1004; Watson v. Seekins (1988), 234 Mont. 309, 312, 763 P.2d 328, 331.  Furthermore, it is undisputed that any attempt by the Legislature to retroactively change the law in effect at the time of an injury would be an unconstitutional impairment of contract.  Buckman v. State Comp. Ins. Fund (1986), 224 Mont. 318, 328, 730 P.2d 380, 386.

Based on these well-established principles of law, we make the following conclusions: (1) the 1987 temporary cap applies to injuries which occurred between July 1, 1987, and June 30, 1989; (2) the 1987 temporary cap expired June 30, 1989; (3) the 1989 temporary cap applies to injuries which occurred between July 17, 1989, and June 30, 1991; (4) the 1989 temporary cap expired June 30, 1991; and (5) the 1989 temporary cap cannot be applied retroactively to injuries which occurred prior to July 17, 1989, the date on which it became effective.

Accordingly, we hold that the Workers' Compensation Court erred when it concluded that the temporary cap on maximum benefits enacted in 1987 did not expire until June 30, 1991.  That part of the Workers' Compensation Court's judgment to the contrary is reversed.

                              ISSUE 2
Did the Workers' Compensation Court err when it concluded that the settlement agreements entered into between claimants and the State Fund foreclose claimants' rights to additional benefits?

During the pendency of this litigation, four of the claimants--Jay Harbrige, Susan Vernon, Steve Prickett, and James Brown--reached settlement agreements with the State Fund.  The Workers' Compensation Court concluded that those agreements foreclose claimants' rights to all further workers' compensation benefits, including increased temporary total and impairment rating benefits.

On appeal, claimants contend that the settlement agreements foreclose only their entitlements to wage supplement and rehabilitation benefits and, therefore, that the Workers' Compensation Court erred when it concluded that those agreements foreclose their rights to all further benefits.  In support of this contention, they assert the following two arguments: (1) pursuant to Ingraham v. Champion International (1990), 243 Mont. 42, 793 P.2d 769, the settlement petitions used by the parties (DOLI Form LF820) cannot

be applied to impairment awards; and (2) because the settlement petitions are ambiguous, the court can and should analyze extrinsic evidence in order to determine the parties' intent.

Claimants' first argument asserts that: (1) pursuant to Ingraham, impairment awards are not subject to the lump sum conversion requirements of 39-71-741, MCA; (2) the settlement petitions used in this case (DOLI Form LF820) are specifically designed to implement the provisions of 39-71-741(2), MCA; and (3) therefore, the settlement petitions cannot be applied to impairment awards.

Although 39-71-741(2), MCA (1987-89), permits permanent total disability and permanent partial wage supplement benefits to be converted to a lump sum, it does not preclude claimants who are entitled to either type of those benefits from fully and finally settling their potential rights to other types of benefits. Furthermore, Ingraham merely provides that lump sum awards of impairment benefits are not subject to the requirements set forth in 39-71-741(2), MCA (1987-89). Ingraham, 243 Mont. at 47, 793 P.2d at 772. We therefore conclude that claimants' reliance upon Ingraham is misplaced.

Second, claimants contend that the settlement petitions are ambiguous and, therefore, that the court can and should analyze extrinsic evidence---the contemporaneous correspondence between the parties--in order to determine the parties' intent. In their brief, they concede that there is language in the body of the petitions which "could be construed as closing all claims for all types of benefits." The exact language of the settlement petitions to which they refer provides, in part, that the parties "agreed to fully and finally conclude all compensation and/or rehabilitation payments due the claimant" and that the claimant "petitions the Division of Workers' Compensation . . . for approval of this petition and that the claim be fully and finally closed."

Despite that operative language in the petitions, claimants allege that, based on the following factors, the settlement petitions are ambiguous: (1) the petitions are standardized forms, produced by the DOLI; (2) the petitions are designed to implement, and correspond directly to 39-71-741(2), MCA; and (3) the petition is captioned: "(Permanent Partial Wage Supplement and/or Rehabilitation Benefits)."

Although the settlement petitions are, in fact, standardized forms produced by the DOLI pursuant to 39-71-741(2), MCA, claimants' counsel selected and prepared the petitions, and then forwarded them to the State Fund for execution. Claimants' counsel, however, did not attempt to modify the unambiguous language in the petitions; nor did they use the additional spaces provided to insert any special provisions or to indicate the retention of any specific rights. Had they intended to enter into only a partial

settlement, they could easily have inserted an express provision which retained their rights to further benefits.

Therefore, even if we assume, without deciding, that the settlement petitions in this case are, in fact, ambiguous, we conclude that any such ambiguities must be strictly construed against the party who created them. Mueske v. Piper, Jaffray & Hopwood, Inc. (1993), 260 Mont. 207, 216, 859 P.2d 444, 449-50; Lauterjung v. Johnson (1977), 175 Mont. 74, 78, 572 P.2d 511, 513. Accordingly, we hold that the Workers' Compensation Court did not err when it concluded that the settlement agreements entered into between claimants and the State Fund foreclose claimants' rights to all further benefits, including increased temporary total and impairment rating benefits. That part of the judgment of the Workers' Compensation Court is affirmed.

ISSUE 3

Did the Workers' Compensation Court err when it denied claimants' motion for attorney fees pursuant to the common fund doctrine?

As a result of our decision in Murer II, the State Fund became obligated to increase the rate of benefits payments to a substantial number of workers' compensation claimants who were neither parties to, nor directly involved in the Murer litigation. Accordingly, the State Fund agreed to contact and pay those absent claimants. Under supervision of the Workers' Compensation Court, the State Fund identified and notified the absent claimants, and disbursed to them the required increase in benefits.

Claimants and their attorneys asserted a lien against those increased payments. In recognition of that lien, the State Fund withheld 20 percent from the amounts paid to absent claimants. Claimants also moved the Workers' Compensation Court to award them attorney fees pursuant to the common fund doctrine. The Workers' Compensation Court, however, denied that motion.

On appeal, claimants contend that the Workers' Compensation Court erred when it denied their motion. Claimants concede that they do not have attorney fee agreements with the absent claimants and that they are not statutorily entitled to the requested fees. However, they maintain that, as a result of their attorneys' efforts throughout the Murer litigation, they have created a common fund which has directly benefitted a substantial number of the absent claimants and, therefore, that those absent claimants should be required to share in the costs, including reasonable attorney fees, of this unique litigation. On that basis, claimants assert that they are entitled, pursuant to the equitable common fund doctrine, to reimbursement of their reasonable attorney fees.

The common fund doctrine is deeply rooted in American jurisprudence and provides a well-recognized exception to the traditional American rule regarding attorney

fees. The United States Supreme Court created the common fund doctrine in Trustees v. Greenough (1881), 105 U.S. 527, 15 Otto 527, 26 L. Ed. 1157, and has subsequently applied that doctrine in numerous other cases. See e.g. Boeing Co. v. VanGemert (1980), 444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676; Alyeska Pipeline Serv. Co. v. Wilderness Society (1975), 421 U.S. 240, 95 S. Ct. 1612, 44 L. Ed. 2d 141; Fleischmann Distilling Corp. v. Maier Brewing Co. (1967), 386 U.S. 714, 87 S. Ct. 1404, 18 L. Ed. 2d 475; Hobbs v. McLean (1886), 117 U.S. 567, 6 S. Ct. 870, 29 L. Ed. 940; Central Railroad & Banking Co. v. Pettus (1885), 113 U.S. 116, 5 S. Ct. 387, 28 L. Ed. 915. These common fund doctrine cases provide that when a party has an interest in a fund in common with others and incurs legal fees in order to establish, preserve, increase, or collect that fund, then that party is entitled to reimbursement of his or her reasonable attorney fees from the proceeds of the fund itself.

In Means v. Montana Power Co. (1981), 191 Mont. 395, 625 P.2d 32, we recognized that the common fund doctrine is "rooted in the equitable concepts of quasi-contract, restitution and recapture of unjust enrichment. " Means, 191 Mont. at 403, 625 P.2d at 37. Furthermore, we expressly adopted the common fund doctrine and concluded that:

> The "common fund" concept provides that when a party through active litigation creates, reserves or increases a fund, others sharing in the fund must bear a portion of the litigation costs including reasonable attorney fees. The doctrine is employed to spread the cost of litigation among all beneficiaries so that the active beneficiary is not forced to bear the burden alone and the "stranger" (i.e., passive) beneficiaries do not receive their benefits at no cost to themselves.

Means, 191 Mont. at 403, 625 P.2d at 37.

Application of the common fund doctrine is especially appropriate in a case like this where the individual damage from an institutional wrong may not be sufficient from an economic viewpoint to justify the legal expense necessary to challenge that wrong. The alternative to the doctrine's application is simply for the wrong to go uncorrected.

Based on these legal principles and authorities, we conclude that when a party, through active litigation, creates a common fund which directly benefits an ascertainable class of non-participating beneficiaries, those non-participating beneficiaries can be required to bear a portion of the litigation costs, including reasonable attorney fees. Accordingly, the party who creates the common fund is entitled, pursuant to the common fund doctrine, to reimbursement of his or her reasonable attorney fees from that fund.

Claimants have engaged in complex, lengthy, and expensive litigation. As a result, they were able to establish, in Murer II, a legal precedent which directly benefits

a substantial number of workers' compensation claimants who were neither parties to, nor
directly involved in the Murer litigation.  However, claimants have also accomplished
significantly more than just the establishment of a favorable legal precedent.
Additionally, claimants established a vested right on behalf of the absent claimants to
directly receive immediate monetary payments of past due benefits underpayments; and
based on the establishment of those vested rights, the State Fund became legally obligated
to make the increased benefits payments.

In order to implement the mandate of Murer II, the State Fund, under supervision
of the Workers' Compensation Court: (1)  identified a substantial number of absent
claimants; (2) notified those claimants of their rights pursuant to Murer II; (3) calculated,
with mathematical certainty,  the increases to which each individual absent claimant is
entitled; and (4) made actual payments to those claimants.  The State Fund, therefore, has
been able to determine, with certainty, the number of absent claimants involved and the
amount of money to which each individual claimant is entitled.  Accordingly, as a direct
result of claimants' litigation efforts, a substantial number of absent claimants have
received direct monetary benefits payments, even though  they were not required to
intervene, file suit, risk expense, or hire an attorney.

Moreover, claimants filed a lien on the increased benefits payments made by the
State Fund to absent claimants.  In recognition of that lien, the State Fund withheld 20
percent from the payments which have actually been disbursed to the individual absent
claimants.  In essence, therefore, claimants request that they be awarded a reasonable
percentage of the amounts which have actually been paid to an identifiable class of absent
claimants.

Based on the facts in this case, we conclude that claimants, through active
litigation, created a common fund which has directly benefitted an ascertainable class of
absent workers' compensation claimants and, therefore, that those absent claimants should
be required to contribute, in proportion to the benefits they actually received, to the costs
of the litigation, including reasonable attorney fees.  Accordingly, we hold that the
Workers' Compensation Court erred when it denied claimants' motion and refused to
award them reasonable attorney fees pursuant to the common fund doctrine. The
judgment of the Workers' Compensation Court to the contrary is reversed.

CROSS-APPEAL ISSUE 1

Did the Workers' Compensation Court err when it concluded that an impairment
award, paid in the form of a lump sum before June 30, 1991, at the request of Claimant
Keith Mordja, must be increased pursuant to Murer II ?

Claimant Keith Mordja was injured on January 17, 1988.  On June 14, 1990, he

was found to have achieved maximum healing and his physician evaluated his physical impairment at 30 percent.  That rating entitled him, pursuant to  39-71-703, MCA (1987), to an impairment award of 150 weeks at the maximum statutory rate.  He elected
to receive his impairment award in a lump sum and received the balance on July 10, 1990.  Pursuant to  39-71-703(1)(a)(iii), MCA (1987), his lump sum award was reduced to present value.  The calculation by which the State Fund reduced his award to present
value utilized a period of 150 weeks, commencing June 14, 1990.  Thus, 54.57 of the weeks occurred before July 1, 1991, and 95.43 of the weeks occurred after July 1, 1991.

    Pursuant to our holding in Murer II that the 1987 and 1989 caps on maximum disability benefits were only temporary, Mordja sought an adjustment of his lump sum impairment award to reflect the increased rate.  The State Fund, however, determined that the 1987 temporary cap did not expire until 1991 and, on that basis, refused to pay
the increase for those weeks prior to July 1, 1991. The State Fund also refused to pay the
increase for those weeks after July 1, 1991, based on the fact that Mordja received his
lump sum award on July 10, 1990, which was prior to the 1991 expiration of the temporary caps.
    Based on its determination that the 1987 temporary cap on benefits did not expire
until 1991, the Workers' Compensation Court concluded that Mordja is not entitled to an
increased impairment award for the 54.57 weeks prior to July 1, 1991.  The court, however, found that "[e]ven though all benefits were paid in a lump sum, 95.43 weeks of those benefits were attributable to July 1, 1991 and thereafter."  On that basis, the
court concluded that Mordja is entitled to an increased impairment award for the 95.43
weeks after July 1, 1991.
    On appeal, the State Fund contends that the Workers' Compensation Court erred when it determined that Mordja is entitled to an increased award for the 95.43 weeks after July 1, 1991.  However, we conclude that the State Fund's contention is now moot.
In Issue 1 of this opinion, we concluded that the 1987 temporary cap on benefits expired,
by its express terms, on June 30, 1989, and that the 1989 temporary cap applies only to
injuries which occurred between July 17, 1989, and June 30, 1991.
    Mordja's injury occurred on January 17, 1988, and therefore, the 1987 temporary cap governs his claim.  See Chagnon, 259 Mont. at 25, 855 P.2d at 1004.  The actual payment of his lump sum award, however, did not occur until July 10, 1990, more than one year after the 1987 cap expired.  Moreover, the 1989 cap cannot be applied retroactively to an injury which occurred before July 17, 1989, the date on which it became effective.  See Buckman, 224 Mont. at  328, 730 P.2d at 386.
    Therefore, we conclude that the temporary cap on Mordja's disability benefits expired June 30, 1989, and that, concomitantly, his entire 150-week benefit package, which was paid after the applicable 1987 temporary cap expired, must be calculated at

the maximum statutory rate and is not subject to the temporary cap on benefits. On that
basis, we hold that the Workers' Compensation Court: (1) did not err when it concluded
that Mordja is entitled to an increase in his impairment award for the 95.43 weeks after
July 1, 1991; and (2) erred when it concluded that Mordja is not entitled to an increase
for the 54.57 weeks prior to July 1, 1991. Accordingly, that part of the judgment of the
Workers' Compensation Court is affirmed in part and reversed in part.

CROSS-APPEAL ISSUE 2

Did the Workers' Compensation Court err when it determined that the State Fund's
refusal to increase Mordja's impairment award was unreasonable and, on that basis,
assessed a penalty pursuant to  39-71-2907, MCA?

Whether an  action is "unreasonable" pursuant to  39-71-2907, MCA, is a
"question of fact which is subject on appeal to the limited review of the substantial
evidence test.  If there is substantial evidence to support a finding of 'unreasonableness',
this Court cannot overturn the finding."  Wight v. Hughes Livestock Co., Inc. (1981), 194
Mont. 109, 115, 634 P.2d 1189, 1192; see also Marcott v. Louisiana Pacific Corp.
(1996), 275 Mont. 197, 203, 911 P.2d 1129, 1133 ("reasonableness").

The Workers' Compensation Court determined that:

> The State Fund's refusal to pay the additional benefits was
> unreasonable.  More than 95 weeks of the benefits were attributable to the
> time period after  the temporary cap had expired.  In paying the benefits in
> a lump sum the State Fund discounted the future benefits to present value
> (See  39-71-703(1)(a)(iii), MCA (1987)), thus acknowledging that the
> benefits were attributable to the later time.  The matter was not reasonably
> debatable.

On that basis, the court assessed a 20 percent penalty in the amount of $191.32 pursuant
to  39-71-2907, MCA.

We conclude that the Workers' Compensation Court's findings are supported by
substantial evidence.  Accordingly, we hold that the court did not err when it concluded
that the State Fund's failure to increase Mordja's impairment award was unreasonable
and, on that basis, assessed a 20 percent penalty pursuant to  39-71-2907, MCA. That
part of the judgment of the Workers' Compensation Court is affirmed.

For these reasons, and based on these conclusions, this case is remanded to the
Workers' Compensation Court for further proceedings consistent with this opinion.

/S/  TERRY N. TRIEWEILER

We Concur:

/S/  WILLIAM E. HUNT, SR.
/S/  JIM REGNIER
/S/  W. WILLIAM LEAPHART

/S/ JAMES C. NELSON

Justice Karla M. Gray, concurring in part and dissenting in part.


I concur in the Court's opinion on all issues except that involving the award of attorney fees pursuant to the common fund doctrine. I respectfully dissent from the opinion on that issue.

There is no question but that we have recognized and applied the common fund doctrine, which is based on equitable concepts. Means, 625 P.2d at 37. I agree with the doctrine and support its application under appropriate circumstances. I cannot agree with its application in this case for two reasons: first, it is my view that neither the Workers' Compensation Court or this Court is authorized to award such fees in the context of the purely statutory workers' compensation system which exists in Montana; and, second, the common fund doctrine is not applicable here in any event.

The Workers' Compensation Act (Act) is a purely statutory scheme, duly enacted by the Legislature, which governs all aspects of workers' compensation claims and awards. The extent of compensation which may be awarded for various types of disabilities is controlled by statute. See, e.g., 39-71-701 through 39-71-703, MCA. In a similar fashion, the Act expressly regulates attorney fees and goes so far as to require an attorney representing a workers' compensation claimant to submit his or her employment contract, setting forth the terms of the fee arrangement, to the Department of Labor and Industry (Department). See, e.g., 39-71-611 through 39-71-614, MCA. In light of these circumstances, the Workers' Compensation Court correctly concluded that it was without authority to create a separate equitable remedy under the Act regarding attorney fees.

Indeed, one of the United States Supreme Court's decisions on which this Court relies in concluding that the common fund doctrine is applicable here reaches a contrary result under circumstances much like those presently before us. Fleischmann involved a claim for trademark violation under the federal Lanham Act and the Supreme Court considered the issue of whether federal courts could award attorney fees as a separate element of recovery in light of the Act's enumeration of available remedies. The Supreme Court discussed the common fund doctrine as an exception to the "American rule" which allows an award of attorney fees only where expressly permitted by statute or contract, but observed that the doctrine had not been developed in the context of statutory causes of action which prescribe statutory remedies. The Supreme Court stated that, "[w]hen a cause of action has been created by a statute which expressly provides the remedies for vindication of the cause, other remedies should not readily be implied."

Fleischmann, 386 U.S. at 720 (citations omitted).  Consequently, the Supreme Court was
compelled to conclude "that Congress intended   35 of the Lanham Act to mark the
boundaries of the power to award monetary relief in cases arising under the Act.  A
judicially created compensatory remedy in addition to the express statutory remedies is
inappropriate in this context."  Fleischmann, 386 U.S. at 721.

In my opinion, we must reach the same result here.  The Workers' Compensation
Act is a statutory system providing for a statutory cause of action and statutorily-
prescribed remedies, including attorney fees.  No portion of the Act authorizes the
attorney fees sought here pursuant to the common fund doctrine and we are not free to
judicially engraft equitable remedies such as this onto the Act.  We have stated on prior
occasions, in rejecting "equity and fairness" arguments by both claimants and insurers in
the context of the Act, that it is the province of the courts to construe and apply the law
as we find it and to maintain its integrity as it was written by a coordinate branch of state
government.  See Wildin v. CNA Ins. Co. (1993), 256 Mont. 354, 358, 846 P.2d 1022,
1025; Raffety v. Kanta Products, Inc. (1991), 250 Mont. 268, 272, 819 P.2d 1272,
1275.
Doing so here requires us to affirm the Workers' Compensation Court's conclusion that
the common fund doctrine for awarding attorney fees is not available in the context of the
Act.

It is also my view that, even if the equitable remedy were not precluded by the
Act, it is unavailable here.  As set forth by the Court, the common fund doctrine
recognized by the United States Supreme Court provides that "when a party has an
interest in a fund in common with others and incurs legal fees in order to establish . . .
that fund, then that party is entitled to reimbursement of his or her reasonable attorney
fees from the proceeds of the fund itself."  Similarly, as recognized by this Court in
Means, the doctrine is employed to spread the cost of litigation among all beneficiaries
so that "the active beneficiary is not forced the bear the burden alone. . . ."  Means, 625
P.2d at 37.  I submit that these requirements are not met in this case.

In the first place, it is my view that there is no common fund here.  While Murer
II undoubtedly created an entitlement in numerous individual nonparty claimants to
additional benefits, no "fund" was set aside for the payment of such benefits, either in
the course of this litigation or otherwise.  The common fund cases, while not defining
precisely what is required to constitute a "common fund," each involve a settlement fund,
a judgment fund, or a trust fund of some sort.  This case does not.

Moreover, the common fund cases commonly involve other beneficiaries who also
are parties in the litigation at issue or, at the least, in related litigation.

Here, efforts to certify this litigation as a class action were unsuccessful and the individuals who are receiving additional benefits as a result of Murer II have never been parties to this case. Yet the Court cites to no case under which nonparty beneficiaries have been required to pay a portion of attorney fees under the common fund doctrine.

Finally, while the common fund doctrine is properly applied in certain circumstances to avoid forcing the active party to bear the burden of the attorney fees incurred, those circumstances are not present in this case. The party claimants here are not required by their fee arrangements with counsel to bear the burden of fees in excess of those relating to their own claims; the fee contracts generally provide that the client claimants are responsible only for the standard 20%/25%. Thus, the fees for which "reimbursement" is being sought here are not fees incurred by these claimants such as would support application of the common fund doctrine under the federal cases cited by the Court. They are additional and extraordinary fees sought by the attorneys who represented the named claimants in this case. Similarly, the party claimants are not being forced to bear the burden of attorney fees for the nonparty beneficiaries. That burden ultimately will fall on counsel and, in my view, that is as it should be.

Counsel here submitted their fee agreements with the party claimants to the Department as required by 39-71-613, MCA. These are the fees they sought in their pleadings, pursuant to applicable statutes, through the first two appeals to this Court in this litigation. In the framework of the Act, those are the only fees to which counsel are entitled. Subsequent to Murer II, and on remand to the Workers' Compensation Court, counsel first asserted a claim to fees under the common fund doctrine. At that point, it became clear that counsel had had an early understanding with their claimant clients to seek fees in addition to those obtainable pursuant to the submitted fee agreements. They had planned to be able to do so through the class action mechanism; as noted above, however, efforts to obtain class certification were not successful. An affidavit of record from one counsel repeatedly states that "but for" the "expectation" that the fees would be compensated under the common fund doctrine, counsel would not have been able to afford to pursue the litigation to its successful conclusion, since the amounts to which the party claimants ultimately would be entitled would be small.

While I sympathize with counsel's substantial investment of time in this litigation, and applaud their success on behalf of their clients and the benefits their work is providing to numerous nonparties, I am unpersuaded that we should "bend" the common

fund doctrine to award them fees under a doctrine intended to protect the parties to a suit where, as here, the parties require no protection.  Many legal actions involve risk to counsel of fee awards which are not commensurate with the amount of work performed.  Indeed, it is fair to say that many counsel "give it their all" to the same extent these counsel have done and are altogether unsuccessful, both as to their clients' recovery and their own.  We do not have a system, however, under which counsel are then remunerated based on their "expectations."  We should not create one here.

I would affirm the Workers' Compensation Court's denial of attorney fees under the common fund doctrine.

/S/  KARLA M. GRAY

Chief Justice J. A. Turnage:

I concur in the dissent of Justice Gray.

/S/  J. A.  TURNAGE