No. 93-286

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

TIMOTHY LUND,

      Petitioner and Respondent,

  -vs-

STATE COMPENSATION MUTUAL INSURANCE
FUND/GARDEN CITY PLUMBING AND HEATING, INC.,

      Defendant, Employer and Appellant.

APPEAL FROM:   Workers' Compensation Court of the State of Montana
              The Honorable Timothy **Reardon,** Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

           Oliver Goe; Browning, Kaleczyc, Berry **&** Hoven,
           Helena, Montana

        For Respondent:

           Rex Palmer, Attorney at Law, Missoula, Montana

Submitted on Briefs: January 13, 1994

Decided: February 11, 1294

Filed: FEB 1 1994

**FILED**

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The issue before us is whether the Workers' Compensation Court erred in concluding that, pursuant to § 39-71-709, MCA (1985), claimant could withdraw his election to proceed under § 39-71-703, MCA (1985), and seek benefits under §§ 39-71-705 through 39-71-708, MCA (1985). We hold that the court did not err and, therefore, affirm its grant of claimant's motion for summary judgment.

The relevant facts are uncontested. Claimant Timothy Lund (Lund) was employed by Garden City Plumbing and Heating, Inc. (Garden City) on July 8, 1986, when he was injured in the course and scope of his employment. Garden City's workers' compensation carrier, the State Compensation Mutual Insurance Fund (State Fund), accepted liability for the injury. The parties engaged in litigation concerning the injury; that litigation ended in 1990 with a determination by the Workers' Compensation Court that Lund was entitled to receive 500 weeks of permanent partial disability benefits pursuant to § 39-71-703, MCA (1985), at a weekly rate of $13.34. The State Fund paid benefits pursuant to the court's order. The parties did not enter into a settlement or release of the claim.

On September 9, 1992, Lund notified the State Fund that he was withdrawing his election to proceed under § 39-71-703, MCA (1985), and electing to receive benefits under §§ 39-71-705 through 39-71-708, MCA (1985). He relied on § 39-71-709, MCA (1985), as authority for withdrawing his earlier election.

Lund filed a petition for hearing regarding the change of

election on December 4, 1992, and the State Fund responded. Both parties subsequently moved for summary judgment. The Workers' Compensation Court granted Lund's motion for summary judgment and denied the State Fund's motion. The State Fund appeals.

Our standard in reviewing a grant of summary judgment is the same as that used initially by the trial court under Rule 56, **M.R.Civ.P.** Minnie v. City of Roundup **(1993)**, 257 Mont. 429, 431, 849 **P.2d** 212, 214: We determine whether there is an absence of genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. <u>Minnie,</u> 849 **P.2d** at 214. As noted above, the facts are not disputed here: each party asserted entitlement to judgment as a matter of law. The Workers' Compensation Court concluded that § 39-71-709, MCA **(1985)**, authorized Lund to withdraw his election at any time and, on that basis, granted his motion for summary judgment. We review a court's legal conclusion to determine whether it is correct. Steer, Inc. v. **Dep't** of Revenue **(1990)**, 245 Mont. 470, 474-75, 803 **P.2d** 601, 603.

We begin by summarizing the 1985 version of Montana's Workers' Compensation Act, insofar as it is relevant here. Briefly stated, § **39-71-709(1)**, MCA **(1985)**, permits a claimant to "receive compensation under 39-71-703 or indemnity benefits under 39-71-705 through **39-71-708."** The **"compensation"** available under § 39-71-703, MCA **(1985)**, is the weekly permanent partial disability benefit based on an "actual diminution in the worker's earning capacity measured in **dollars[;]"** the disability benefit is available for a

3

maximum of 500 weeks. The benefit available pursuant to §§ 39-71-705 through 39-71-708, MCA (1985), purports to indemnify a claimant for possible loss of future earning capacity resulting from injuries to specified body members. **Hartman** v. Staley Continental (1989), 236 Mont. 141, 145, 768 **P.2d** 1380, 1383. In the usual case, a claimant elects to seek one or the other type of benefit and proceeds only under that election.

Here, Lund successfully sought permanent partial disability benefits pursuant to § 39-71-703, MCA (1985), in the first proceeding. He was awarded, and received, disability benefits based on his actual loss of earning capacity for the maximum 500 weeks allowed by statute. **See** § 39-71-703, MCA (1985). His actual wage loss was 50¢ an hour, for a weekly rate under § 39-71-703(1), MCA (1985), of $13.34. He subsequently withdrew his election to proceed under § 39-71-703, MCA (1985), and filed a petition to seek indemnity benefits under §§ 39-71-705 through 39-71-708, MCA (1985). Pursuant to those statutes, indemnity benefits to which Lund might establish entitlement would be paid at the weekly rate provided in § 39-71-703, MCA (1985), for a maximum of 500 weeks. See §§ 39-71-705 through 39-71-708, MCA (1985). That rate apparently may be $149.50 per week. The Workers' Compensation Court concluded that § 39-71-709, MCA (1985), authorizes the withdrawal of Lund's initial election. The State Fund asserts error.

The State Fund's argument is that a claimant who elects to seek permanent partial disability benefits under § 39-71-703, MCA

4

(1985), and who receives the statutory maximum of 500 weeks of such benefits, cannot thereafter withdraw the initial election and seek entitlement to benefits under §§ 39-71-705 through 39-71-708, MCA (1985). We disagree.

Section **39-71-709(3)**, MCA **(1985)**, provides in pertinent part that **"[a]** worker who has elected to proceed under 39-71-703 may withdraw his election at any time and is entitled to receive indemnity benefits under 39-71-705 through 39-71-708 . . . . **."** The role of the courts in interpreting statutes is to "declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-Z-101, **MCA.** Moreover,

> [t]he rules of statutory construction require the language of a statute to be construed according to its plain meaning. If the language is clear and unambiguous, no further interpretation is required.

GBN, Inc. v. **Dep't** of Revenue **(1991)**, 249 Mont. 261, 265, 815 **P.2d.** 595, 597.

Lund's right to withdraw his original election and proceed under §§ 39-71-705 through 39-71-708, MCA **(1985)**, is controlled by the language contained in § **39-71-709(3)**, MCA (1985). That statute specifically authorizes a claimant to withdraw a § 39-71-703, MCA **(1985)**, election <u>at any time</u> and seek entitlement to indemnity benefits. Section 39-71-709, MCA **(1985)**, contains no time limitation within which a withdrawal of election must be made: nor do any other applicable statutes contain such time limitations. The statute clearly contemplates and authorizes circumstances such as those before us here. No interpretation is needed.

5

In the face of such clarity, the State Fund's efforts to rely on time limitations for withdrawing an election--based on either the procedural status of the original proceeding or the extent to which benefits have been paid pursuant to order of the court in that proceeding--are unwarranted. The State Fund's arguments in this regard amount to a request that this Court insert into § 39-71-709, MCA (1985), words not contained therein so as to limit the clear statutory rights provided to claimants by the Montana legislature. Such an insertion would be inconsistent with the language of the statute; indeed, it would render that language a nullity.

The State Fund contends, however, that allowing Lund to withdraw his election and seek indemnity benefits, may result in Lund receiving 1000 weeks of benefits, rather than the statutory maximum of 500 weeks contained in § 39-71-703(2), MCA. We agree that Lund already has been awarded the maximum 500 weeks of permanent partial disability benefits authorized by § 39-71-703, MCA (1985). However, Lund is not seeking additional weeks of disability benefits based on the "actual loss of earning capacity" criterion in § 39-71-703, MCA (1985). He seeks, instead, indemnity benefits under §§ 39-71-705 through 39-71-708, MCA (1985). An award of such indemnity benefits would not extend the number of weeks of § 39-71-703, MCA (1985), benefits received by Lund past the statutory maximum; it merely would result in a separate number of weeks of indemnity benefits under §§ 39-71-705 through 39-71-708, MCA (1985), at a higher weekly rate than Lund received in the

6

previous litigation.

The State Fund also argues that allowing Lund to withdraw the earlier election and seek indemnity benefits contravenes the prohibition contained in § 39-71-709(3), MCA (1985), against a "greater benefit" in the event of such a withdrawal. The statute does not support the State Fund's position.

The portion of § 39-71-709(3), MCA (1985), relied on by the State Fund provides that in the event of a withdrawal of election, a worker "shall not be entitled to a greater benefit, including compensation paid under 39-71-703, than he would have received if he had proceeded exclusively under 39-71-705 through 39-71-708." The clear meaning of this language is that a claimant's total benefits cannot exceed the benefits available had the claimant proceeded under §§ 39-71-705 through 39-71-708, MCA (1985), originally. In other words, the claimant cannot stack subsequent indemnity benefits onto earlier disability benefits in order to receive a double recovery. The maximum amount to which a claimant is entitled is that available under the indemnity statutes. Once the Workers' Compensation Court determines the amount of indemnity benefits to which a claimantis entitled under §§ 39-71-705 through 39-71-708, MCA (1985), any amount previously received as disability compensation or benefits under § 39-71-703, MCA (1985), must be offset from that total. When the subtraction is performed, a claimant does not receive a "greater benefit" by receiving the indemnity benefits he would have received had he proceeded originally and exclusively under §§ 39-71-705 through 39-71-708,

7

MCA (1985).

The State Fund's final argument is that principles of <u>res iudicata</u> or collateral estoppel apply because Lund's entitlement to permanent partial disability benefits was finally decided in the prior litigation. We agree that Lund's entitlement to permanent partial disability benefits under § 39-71-703, MCA (1985), was finally decided. However, as discussed above, his entitlement to indemnity benefits is a different issue based on different statutory criteria. Lund's entitlement to indemnity benefits was neither raised nor decided in the previous litigation.

In reality, the State Fund concedes the collateral estoppel argument by recognizing that the identical issue raised here--that is, Lund's entitlement to indemnity benefits--was not litigated in the earlier case. One of the elements required for application of collateral estoppel, of course, is that the issue has been decided in a prior adjudication and is identical to the one presented. Smith v. Schweigert (1990), 241 Mont. 54, 58, 785 P.2d 195, 197. That element not being met here, collateral estoppel is not applicable.

With regard to <u>res</u> judicata, the State Fund asserts that Lund could have pursued his entitlement to indemnity benefits in the prior litigation, but chose not to do so. On that basis, it contends that <u>res iudicata</u> applies to prevent another trial on the issue, relying on Martelli v. Anaconda-Deer Lodge County (1993), 258 Mont. 166, 852 P.2d 579; and Beck v. Flathead County (1989), 240 Mont. 128, 783 P.2d 383.

With regard to Martelli, we note that it involved collateral estoppel, not res judicata. In addition, both the workers' compensation statutes and the facts at issue in that case are distinguishable from those before us here. Beck also is inapposite. In Beck, the defendants failed to litigate an issue during the first appeal, and we concluded that res judicata applied to bar them from arguing it during the second appeal. Beck, 783 P.2d at 386.

On the merits of this argument, we do not disagree with the State Fund about the importance of the basic proposition underlying res judicata--that a party should not be able to relitigate a matter the party has already an opportunity to litigate. See Brault v. Smith (1984), 209 Mont. 21, 25, 679 P.2d 236, 238. Nor do we disagree that Lund had the opportunity to assert entitlement to indemnity benefits in the prior litigation: indeed, the record reflects that he affirmatively chose not to do so. Res judicata is a court-made rule of law, however, the purpose of which is to provide a final resolution of legal controversies. Brault, 679 P.2d at 238. Given the clarity and specificity of the legislative authorization contained in § 39-71-709, MCA (1985), for withdrawal of an election at any time, we conclude that it would be inappropriate to apply the judicial res judicata rule to bar Lund from seeking indemnity benefits as specifically allowed by statute.

We conclude that the Workers' Compensation Court correctly determined that Lund may withdraw his earlier election to proceed under § 39-71-703, MCA (1985), and proceed pursuant to §§ 39-71-705

9

through 39-71-708, MCA (1985). Therefore, we hold that the court did not err in granting Lund's motion for summary judgment.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices