No. 03-217

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 4

OLYMPIC COAST INVESTMENT INC.,
a Washington Corp.,

       Plaintiff and Respondent,

   v.

LARRY D. WRIGHT, a/k/a L.D. WRIGHT, a/k/a LAWRENCE D. WRIGHT
and ANN MARIE WRIGHT, a/k/a ANN M. WRIGHT; VALLEY COUNTY
ABSTRACT COMPANY, INC., a Montana Corporation; ST. MARIE
CONDOMINIUM ASSOCIATION, et al.,

       Defendants and Appellants.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
                 In and for the County of Valley, Cause No. DV 1999-27
                 The Honorable John C. McKeon, Judge presiding.

COUNSEL OF RECORD:

       For Appellants:

              Gary S. Deschenes, Deschenes Law Office, Great Falls, Montana (Attorney
              for Appellants Larry and Ann Marie Wright)

       For Respondent:

              Quentin M. Rhoades, Sullivan, Tabaracci, & Rhoades, P.C., Missoula,
              Montana

Submitted on Briefs:  November 13, 2003

Decided:  January 18, 2005

Filed:

_____
                   Clerk
Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Appellants Larry D. Wright, et al., (Wrights), appeal the grant of summary judgment entered by the Seventeenth Judicial District, Valley County for the Respondents, Olympic Coast Investment, Inc., (Olympic).  We affirm.

¶2      We restate the sole issue on appeal as follows:

¶3      Whether the District Court erred in granting Olympic's Motion for Summary Judgment after determining Wrights' claims were barred by *res judicata*.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4      This matter was submitted to the District Court and to this Court with an agreed Statement of Facts which we reiterate and elaborate on below.

¶5      Wrights are residents of the State of Montana, presently residing in Cascade County, Montana.  Olympic is an investment company incorporated and registered in the State of Washington.  In December of 1996, Wrights approached Olympic about securing loans for commercial construction projects, including building or improving condominiums and hotels, throughout the State of Montana.

¶6      In December of 1996, Wrights executed and delivered a promissory note to Olympic in the principle sum of $910,000 (Note 1), with interest payable at the rate of 12 percent per annum.  Under Note 1, the net disbursement of proceeds in the sum of $346,390 was wired directly to Wrights' bank account in Great Falls.  Additionally, a Montana Trust Indenture was executed on December 11, 1996.  Wrights have not made all the payments due under Note 1.

¶7     In October of 1997, Wrights executed and delivered a second promissory note to Olympic in the principle sum of $695,000. The second promissory note was subsequently refinanced in December of 1997, with Wrights executing and delivering to Olympic a promissory note in the sum of $1,220,000 (Note 2), also payable at the rate of 12 percent per annum. A Montana Trust Indenture was again executed, this time in connection with Note 2 on January 7, 1998. Wrights obtained the net proceeds under Note 2 by Federal Express. Wrights have not made all the payments due under Note 2.

¶8     Finally, in June of 1998, Wrights executed and delivered to Olympic a third promissory note in the sum of $3,550,000 (Note 3) with interest payable at the rate of 13 percent per annum. Wrights obtained the net proceeds from Note 3 at the offices of an escrow and closing agent in the State of Washington. Wrights have not made all the payments due under Note 3.

¶9     Each of the three promissory notes (the Notes) executed and delivered by Wrights to Olympic contain a promise to repay the principle sum as well as a condition securing the loan by a deed of trust. Although the Notes provided the deeds of trust were made within the State of Montana pursuant to the Small Tract Financing Act of Montana (*see* §§ 71-1-301-321, MCA), they also included a choice of law provision dictating their construal under Washington State law.

¶10    When Wrights were unable to meet their obligations under the Notes, Olympic filed a complaint in Cascade County on December 16, 1999, seeking collection of debt on the Notes and foreclosure of real property. Wrights then sought the protections afforded by the

3

Bankruptcy Code by filing a voluntary Chapter 11 Bankruptcy Petition in the United States Bankruptcy Court, District of Montana on December 17, 1999.

¶11 Olympic initiated adversary proceedings pursuant to 28 U.S.C. § 2201 in the Bankruptcy Court against Wrights on April 11, 2000. Olympic sought declaratory relief relative to the obligations owed by Wrights to Olympic arising from the Notes. Wrights filed an answer to Olympic's complaint in Bankruptcy Court denying each of the allegations set forth therein. Wrights also filed a counterclaim for damages claiming the interest rate charged by Olympic under each of the Notes was usurious and prompted by fraud under the laws of the State of Montana. Thereafter, Olympic filed a Motion for Partial Summary Judgment on August 8, 2000, requesting that the Bankruptcy Court adjudicate Wrights' counterclaim under the laws of the State of Washington, rather than the laws of the State of Montana. The Bankruptcy Court denied Olympic's Motion on September 7, 2000.

¶12 On October 11 and 12, 2000, the Bankruptcy Court held trial on the adversary complaint. Both parties appeared with counsel, witnesses were presented and evidence on the issue of usury was offered by both parties. Following the trial, the Bankruptcy Court issued its Findings of Fact, Conclusions of Law and Order on December 14, 2000, entering judgment in favor of Olympic and against Wrights. Applying Montana law, the court determined the Notes were valid, enforceable and unaffected by usury or fraud.

¶13 Wrights timely appealed the Bankruptcy Court Judgment to the United States Bankruptcy Appellate Panel (BAP) and Olympic cross-appealed the application of Montana law, rather than Washington law.

4

¶14 During the appeal to the BAP, Olympic moved the Bankruptcy Court to lift the automatic stay freezing Wrights' assets. The court lifted the stay and certain portions of Wrights' property were sold. After the sale, Wrights made a Motion to Dismiss their Chapter 11 case, stating that with the forced sale of their assets, they were no longer able to put together a feasible reorganization plan as necessitated under the Bankruptcy Act. The court granted Wrights' Motion to Dismiss the bankruptcy claim several days before the scheduled oral argument on the BAP appeal.

¶15 The Wrights eventually moved to dismiss their BAP appeal and Olympic's cross-appeal, contending their dismissal of the Chapter 11 case automatically mooted the controversy presented by the adversary proceeding. Although the BAP noted and honored Wrights' request to abandon their proceedings, it proceeded with oral argument, reasoning since Olympic did not abandon its cross-appeal, the controversy was still justiciable.

¶16 The BAP issued an unpublished Memorandum Opinion on October 9, 2001. In its Opinion, the BAP held the dismissal of the underlying Chapter 11 case did not moot the adversary proceedings as the appeal was not from an "objection to claim" proceeding, but rather from a "not so closely related" declaratory judgment proceeding "litigated through complete trial to judgment by parties who had the incentive to raise every possible matter."

¶17 After dismissal of the bankruptcy claim, Olympic moved for summary judgment in the District Court proceeding, asserting the binding effect of the Bankruptcy Court holding and *res judicata*. Wrights failed to appear and summary judgment was entered. Subsequently, on Motion made under Rule 60(b), the Order of Summary Judgment was set

aside. Thereafter, Wrights moved to amend their answer to allege usury and the "one-action rule" as affirmative defenses.

¶18    Ultimately, the District Court entered an Order granting Olympic's Motion for Summary Judgment. The court concluded that the judgment entered in the Bankruptcy Court met all four of the criteria for the application of *res judicata*, and that Wrights' claims were barred under the doctrine. It then determined that Olympic was entitled to judgment on the Notes and for foreclosure. It rejected the motion to amend the answer as moot. This appeal follows. Notably, Wrights do not appeal from the District Court's dismissal of their "one-action rule" affirmative defense.

## STANDARD OF REVIEW

¶19    We review a district court's grant of summary judgment *de novo*, applying the same evaluation under Rule 56, M.R.Civ.P., as the district court. *Glacier Tennis Club at the Summit, LLC v. Treweek Constr. Co., Inc.,* 2004 MT 70, ¶ 21, 320 Mont. 351, ¶ 21, 87 P.3d 431, ¶ 21 (citations omitted). Rule 56(c), M.R.Civ.P., provides summary judgment should result where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Motarie v. Northern Montana Joint Refuse Disposal District (1995),* 274 Mont. 239, 242, 907 P.2d 154, 156 (citations omitted). We look to the pleadings, depositions, answers to interrogatories, admissions on file and affidavits to determine the existence or nonexistence of genuine issues of material fact. *Krebs v. Ryan Oldsmobile* (1992), 255 Mont. 291, 294, 843 P.2d 312, 314 (citations omitted).

6

¶20     A party seeking summary judgment has the burden of establishing a complete absence of any genuine factual issues. *Motarie,* 274 Mont. at 242, 907 P.2d at 156 (citations omitted). In light of the pleadings and the evidence before the court, there must be no material issue of fact remaining which would entitle a nonmoving party to recover. *Motarie,* 274 Mont. at 242, 907 P.2d at 156 (citations omitted). Once the moving party has met its burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. *Motarie,* 274 Mont. at 242, 907 P.2d at 156 (citations omitted). Once it is established no genuine issues of material fact exist, the district court must then determine whether the moving party is entitled to judgment as a matter of law, and this Court reviews that judgment to determine whether the district court erred. *Glacier Tennis Club*, ¶ 21.

## DISCUSSION

¶21     **Whether the District Court erred in granting Olympic's Motion for Summary Judgment after determining Wrights' claims were barred by *res judicata*.**

¶22     Wrights argue the District Court erroneously granted Olympic's Motion for Summary Judgment after concluding Wrights' amended claims were barred by the doctrine of *res judicata*. While Wrights concede they argued usury in the Bankruptcy Court during their Chapter 11 proceedings, they maintain the District Court improperly ruled *res judicata* prevented them from pursuing this defense and claim in state court.

¶23     Wrights assert they never received a "final judgment" on the usury claim as they were never afforded a complete opportunity to appeal the Bankruptcy Court's decision. Rather,

7

Wrights contend they were compelled to dismiss their bankruptcy proceedings during the appeal to the BAP after the Bankruptcy Court lifted the automatic stay and allowed their hotels and buildings to be sold by trust indenture. They argue that the trust indenture sale prevented them from presenting a feasible plan in bankruptcy, which would have resulted in a dismissal. As such, even if they had been successful in the BAP on the usury issue, Wrights allege their case would have been dismissed anyway. Thus, Wrights assert they were never afforded a full and final judgment regarding their usury claim, and thus the District Court erred and *res judicata* should not apply.

¶24    Olympic counters the District Court did not err when it granted Olympic's Motion for Summary Judgment after concluding Wrights' amended claims were barred by the doctrine of *res judicata*. Olympic contends the usury matter was litigated to a final judgment in the bankruptcy proceedings, and the Wrights thereafter voluntarily dismissed their appeal of that judgment. Moreover, Olympic points to the BAP's Order ruling the declaratory judgment action was not so closely related to the bankruptcy that the dismissal of the Chapter 11 case rendered the declaratory judgment action moot. Thus, Olympic asserts the declaratory judgment action remained valid and enforceable according to the court, even though the Chapter 11 case had been dismissed, and Wrights' contention their appeal was dismissed as moot is incorrect. The court did not dismiss the case as moot but rather dismissed it on Wrights' voluntary motion. *Res judicata*, according to Olympic, therefore applies.

¶25    In sum, then, Olympic contends the decisions in the Bankruptcy Court are *res judicata* to the issues raised in the District Court, including those sought to be included by Wrights'

last motion to amend.  Wrights respond *res judicata* does not apply because they were required to abandon their BAP appeal due to cash flow obligations under a reorganization plan.  Thus, Wrights contend they were prevented from getting their full remedy before the bankruptcy courts.

¶26    *Res judicata* effectively "bars a party from re-litigating a matter he or she has already had an opportunity to litigate." *Grenz v. Fire Casualty of Connecticut*, 2001 MT 8, ¶ 14, 304 Mont. 83, ¶ 14, 18 P.3d 994, ¶ 14.  Once there has been a full opportunity to present an issue for judicial decision in a given proceeding, the determination of the court in that proceeding must be accorded finality as to all issues raised or which fairly could have been raised, else judgments might be attacked piecemeal and without end.  *Slater v. Central Plumbing & Heating Co.*, 1999 MT 257, ¶ 25, 297 Mont. 7, ¶ 25, 993 P.2d 654, ¶ 25.  *Res judicata* applies when the following criteria are met:

1. The parties or their privies are the same;
2. The subject matter of the action is the same;
3. The issues related to the subject matter are the same;
4. The capacities of the person are the same in reference to the subject matter and the issues between them.

*Fox v. 7L Bar Ranch Company* (1982), 198 Mont. 201, 206, 645 P.2d 929, 931.  *Res judicata* serves the public function of finality of judgments and conservation of scarce judicial resources by avoiding multiplicity of proceedings on the same legal and factual issues. *Wellman v. Wellman* (1986), 198 Mont. 42, 45-46, 643 P.2d 573, 575.

¶27    Wrights maintain that pursuant to our holding in *Traders State Bank v. Mann* (1993), 258 Mont. 226, 852 P.2d 604 (*Mann II*), the judgment in bankruptcy court was not binding

9

on the state district court action. In *Mann II*, we considered whether a district court erred in granting summary judgment for the plaintiffs after determining the doctrine of *res judicata* barred the defendants from raising contract defenses on a foreclosure action.

¶28     In *Mann II*, the defendants executed two promissory notes to the plaintiffs secured by real property. *Mann II*, 258 Mont. at 231, 852 P.2d at 607. When the defendants were unable to meet their obligations under the promissory notes, they filed for relief under Chapter 12 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Montana. The defendants also filed a tort claim against the plaintiffs in state court, alleging breach of the covenant of good faith and fair dealing and breach of fiduciary duty. *Mann II*, 258 Mont. at 231, 852 P.2d at 607. The state district court eventually granted summary judgment in favor of the defendants on the tort claims. We affirmed that judgment in *Mann Farms, Inc. v. Traders State Bank* (1990), 245 Mont. 234, 801 P.2d 73 (*Mann I*).

¶29     Following complicated proceedings, the United States Bankruptcy Court dismissed the defendant's bankruptcy proceeding. *Mann II*, 258 Mont. at 232, 852 P.2d at 608. Thereafter, the plaintiffs filed a complaint against the defendants, seeking judgment on the promissory notes. The complaint alleged the defendants had defaulted on the notes and the amounts remaining were owing. *Mann II*, 258 Mont. at 232, 852 P.2d at 608. The defendants answered and asserted third-party claims against the plaintiffs and others alleging the plaintiffs had committed fraud upon the court in the earlier bad faith action. *Mann II*, 258 Mont. at 232-33, 852 P.2d at 608. Eventually, the District Court granted summary judgment for the plaintiffs on the foreclosure issue. *Mann II*, 258 Mont. at 234, 852 P.2d at

609. The district court reasoned the plaintiffs had established a prima facie case of foreclosure, and that all of the defendants' defenses to foreclosure were barred under the doctrine of *res judicata*.

¶30 We reversed, concluding in *Mann II* that the issues involved in *Mann I* were different from those later raised as contract defenses to foreclosure. Specifically, on the issue of *res judicata*, we held the entirety of the defendants' tort action took place while they were in bankruptcy, and during which time they could not challenge the validity of the notes and security interests. *Mann II*, 258 Mont. at 239, 852 P.2d at 612. In fact, during the pendency of the defendants' bankruptcy proceeding, and pursuant to the specific terms of their plan of reorganization, the *Mann II* defendants were *precluded* from challenging the validity of the notes and security interests. As such, the district court's determination the defendants could have raised their contract-related defenses in *Mann I* was incorrect and the defendants' claims were not barred by *res judicata*.

¶31 In this case, the judgment following the adversary proceeding in bankruptcy court meets all four of the *res judicata* criteria. The parties are the same in this case as in the adversary proceedings. Olympic sued Wrights in the foreclosure complaint and the parties are the same in the present action. The subject matter is also the same in that the cases address the underlying obligation of Wrights to Olympic under the Notes. Similarly, the parties litigating the issues served in the same capacity with Olympic as the creditor and Wrights as the debtors.

11

¶32    As in *Mann II*, the third element--whether the issues are the same--is the key element here. In order to determine whether the issues are the same, "the fundamental or essential question involved in the second case must have been raised and determined in the first case." *Mann II*, 258 Mont. at 238, 852 P.2d at 611 (citing *Whirry v. Swanson* (1992), 254 Mont. 248, 251, 836 P.2d 1227, 1229). Thus, we must resolve whether the precise questions raised in the adversary proceedings are the same as those raised in the present case.

¶33    Based on our review of the record, we hold Wrights were not precluded from litigating any of their defenses to the Notes in the bankruptcy adversary proceedings, thus distinguishing this case from *Mann II*. In *Mann II*, the defendants were precluded from litigating certain issues in the bankruptcy action due to an agreement in their reorganization plan. Here, however, Wrights litigated their defenses to the Notes in the adversary proceedings in the Bankruptcy Court to conclusion. In opposition to Olympic's declaratory judgment action, Wrights filed counterclaims arguing usury and fraud. Indeed, unlike the defendants in *Mann II*, nothing in Wrights' Chapter 11 plan prevented them from litigating their usury claim. A two-day trial was held at which both parties appeared represented by counsel and presented evidence on the usury claim. The Bankruptcy Court considered the evidence and issued its Findings of Facts, Conclusions of Law and Order disposing of all issues in favor of Olympic, and dismissing Wrights' usury claims. Moreover, the BAP issued an Order ruling the declaratory action was not so closely related to the bankruptcy that the dismissal of the Chapter 11 case rendered the declaratory action moot. As such, the declaratory judgment action would have remained valid had Wrights not requested dismissal.

Thus, we conclude Wrights were not precluded from litigating any of their defenses to the Notes in the bankruptcy adversary proceedings. This being so, they were properly barred by *res judicata* from relitigating the usury issue in District Court.

¶34 We next assess whether Olympic was entitled to judgment as a matter of law. To prevail on summary judgment, Olympic, as the moving party, had to establish the evidence raised no genuine issues of material fact. *Motarie*, 274 Mont. at 242, 907 P.2d at 156 (citations omitted). As noted above, the District Court found Wrights had executed the Notes and security agreements at issue and Wrights were in default on those instruments. It concluded Wrights were not precluded from litigating any of their defenses to the Notes in the adversary proceedings and were barred by *res judicata* from relitigating the usury issue. Thus, Olympic met its initial burden on summary judgment. Based on our review of the record and the conclusions contained above, we agree.

¶35 Once the moving party has met its burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. *Motarie,* 274 Mont. at 242, 907 P.2d at 156 (citations omitted). Here, the District Court determined Wrights presented no material or substantial evidence to raise a genuine issue of material fact relating to the default on the Notes. We agree. Thus, the District Court did not err in granting Olympic's Motion for Summary Judgment.

¶36 For the foregoing reasons, the District Court is affirmed.

/S/ PATRICIA O. COTTER

We Concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER

[End]