DA 20-0356

FILED

05/25/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0356

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 129

ALEXANDER R. BRISHKA AND ILMA
BRISHKA, AS CO-TRUSTEES OF THE
BRISHKA TRUST ESTABLISHED
MARCH 29, 1999,

          Plaintiffs and Appellants,

   v.

STATE OF MONTANA, DEPARTMENT
OF TRANSPORTATION,

          Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District,<br>In and For the County of Flathead, Cause No. DV-15-645(D)<br>Honorable Dan Wilson, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Clifton W. Hayden, Law Offices of Clifton W. Hayden, Whitefish, Montana

      For Appellee:

            Mikel L. Moore, Moore, Cockrell, Goicoechea & Johnson, P.C., Kalispell, Montana

                       Submitted on Briefs: March 31, 2021

                                Decided: May 25, 2021

Filed:

                    _____
                                Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Alexander and Ilma Brishka, as co-trustees of the Brishka Trust (collectively "Brishkas"), appeal an Eleventh Judicial District Court order granting summary judgment in favor of the State of Montana, Montana Department of Transportation ("MDT"), on claims of inverse condemnation, negligence, and attorney fees and costs.[1] We affirm.

¶2 We address the following issue on appeal:

*Whether the District Court erred in granting MDT's motion for summary judgment, concluding the doctrine of collateral estoppel precluded the Brishkas from pursuing their claims of inverse condemnation, negligence, and attorney fees and costs.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The Brishkas own property north of Whitefish along Montana Highway 487 (commonly known as Big Mountain Road). The Brishkas maintained a private, 4.5 million-gallon, man-made fishpond on the property. During a large storm event on August 2 through 3, 2013, the pond breached its banks and water flowed downslope, releasing nearly all of the 4.5 million gallons of impounded water in a torrent that carried boulders, trees, and other debris downhill. The water caused damage to the pond and to downstream property.

¶4 The Brishkas sued MDT in July 2015, alleging that the breach of the pond resulted from MDT's improvement of Big Mountain Road during the summer of 2007. In their

---

[1] Brishkas specifically limit the scope of their appeal in their Statement of the Case and Conclusion to the District Court's grant of summary judgment on their inverse condemnation and attorney fees and costs claims. In their Statement of the Issue, however, Brishkas refer to "Counts I, III and V of Brishka Trust's Complaint." Count III in Brishka's Complaint asserts a negligence claim. Thus, we will address the District Court's order granting summary judgment on Brishkas' negligence claim.

2

Complaint, the Brishkas asserted claims under inverse condemnation (Count I), negligence per se (Count II), negligence (Count III), nuisance (Count IV), and attorney fees and costs (Count V). In September 2018, MDT filed its first motion for summary judgment on the Brishkas' negligence per se and nuisance claims, respectively Counts II and IV. The District Court granted the motion on November 13, 2018. This order is not contested in this appeal.

¶5 Brishkas' July 2015 action is not the only litigation concerning the pond's failure on the Brishka property. In July 2016, Michael and Stacey Covey and the Covey Trust (collectively "Coveys"), owners of the property downhill from the Brishka property, brought suit against the Brishkas for damages suffered to their property located on Whitefish Lake as a result of the breach of the pond. *See Michael J. Covey, et al. v. Alexander R. Brishka, et al.*, No. DV-15-2016-618A (Mont. Eleventh Judicial Dist. filed July 28, 2016) (hereinafter, "DV-16-618"). Allegations regarding the impact of MDT's activities and reconstruction of Big Mountain Road were central to the Brishkas' defense in DV-16-618. Brishkas proffered expert witness testimony regarding MDT's activities surrounding the Big Mountain Road construction and the impact it had on the volume of water entering the pond during the August 2013 storm event. However, due to the Brishkas' failure to timely disclose their expert, the district court limited the testimony to the matters contained in the expert's initial expert disclosure. Despite their claims and proffered evidence that MDT's Big Mountain Road reconstruction activities caused the pond failure, neither the Coveys nor the Brishkas joined MDT as a party in DV-16-618. In April 2018, the district court presided over a three-day jury trial on the matter. During the

3

trial, the district court ruled, as a matter of law, that maintenance of the pond constituted an abnormally dangerous condition warranting the application of strict liability. The jury in DV-16-618 returned a verdict against the Brishkas and awarded damages to the Coveys.

¶6 The Brishkas appealed. In July 2019, this Court affirmed the district court's pretrial and trial rulings in *Covey v. Brishka*, 2019 MT 164, 396 Mont. 362, 445 P.3d 785 ("The [d]istrict [c]ourt did not err when it determined the Brishkas were strictly liable for any damage their pond might cause because it constituted an abnormally dangerous condition." *Covey*, ¶ 32; "The [d]istrict [c]ourt did not abuse its discretion when it limited the scope of expert testimony to what the Brishkas included in their initial expert disclosure and granted Coveys' [motion in limine.]" *Covey*, ¶ 66; "[T]he [d]istrict [c]ourt did not err when it excluded evidence at trial that [MDT] was potentially at fault for the Coveys' damages." *Covey*, ¶ 68).

¶7 Following our decision in *Covey*, MDT filed its second motion for summary judgment on the Brishkas' remaining claims for inverse condemnation, negligence, and attorney fees and costs, respectively Counts I, III, and V. MDT argued that, in DV-16-618, the Brishkas had a full and fair opportunity to litigate not only the issue of liability for harm resulting from the breach of the pond, but also the cause of the breach of the pond. MDT argued that because the district court in DV-16-618 concluded the Brishkas were strictly liable for any damage caused by their maintenance of the private fishpond, the Brishkas were collaterally estopped from relitigating the issues in this action.

¶8 On April 20, 2020, the District Court granted summary judgment on all three counts. The court concluded that the Brishkas were collaterally estopped from relitigating, as part

4

of their negligence and inverse condemnation claims in the present matter, the issues of proximate cause and damages for the breach of the pond and the impact of MDT's reconstruction of Big Mountain Road. The court granted MDT summary judgment on Count V for attorney fees and costs. Brishkas appeal.

## STANDARD OF REVIEW

¶9 We review de novo a district court's grant or denial of summary judgment. *Crane Creek Ranch, Inc. v. Cresap*, 2004 MT 351, ¶ 8, 324 Mont. 366, 103 P.3d 535. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Borges v. Missoula Cty. Sheriff's Office*, 2018 MT 14, ¶ 16, 390 Mont. 161, 415 P.3d 976. To determine whether a genuine issue of material fact exists, we view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *McLeod v. State ex rel. Dep't. of Transp.*, 2009 MT 130, ¶ 12, 350 Mont. 285, 206 P.3d 956. If the moving party satisfies its burden by demonstrating there are no genuine issues of material fact and the party is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. *Valley Bank v. Hughes*, 2006 MT 285, ¶ 14, 334 Mont. 335, 147 P.3d 185. The non-moving party cannot create a genuine issue of material fact by putting its own interpretations and conclusions on an otherwise clear set of facts or by making conclusory statements. *Sprunk v. First Bank Sys.*, 252 Mont. 463, 466, 830 P.2d 103, 105 (1992) ("conclusory statements do not rise to the level of genuine issues of material fact . . . ."). "If no genuine issues of material fact exist, a court must determine whether the facts entitle

5

the moving party to judgment as a matter of law." *Borges*, ¶ 16. We review conclusions of law for correctness. *Valley Bank*, ¶ 15.

## DISCUSSION

¶10 *Whether the District Court erred in granting MDT's motion for summary judgment, concluding the doctrine of collateral estoppel precluded the Brishkas from pursuing their claims of inverse condemnation, negligence, and attorney fees and costs.*

¶11 Collateral estoppel, or issue preclusion, bars litigants from reopening an issue that was litigated and determined in a prior suit. *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1276. It also prevents relitigation of determinative facts that were actually or necessarily decided in a prior action. *Baltrusch*, ¶ 25 (emphasis omitted) (citing *Haines Pipeline Constr. v. Montana Power Co.*, 265 Mont. 282, 288, 876 P.2d 632, 636 (1994)). Like res judicata, or claim preclusion, the doctrine of collateral estoppel embodies a judicial policy that favors finality to litigation and helps "prevent parties from incessantly waging piecemeal, collateral attacks against judgments." *Baltrusch*, ¶ 15 (citing *Kullick v. Skyline Homeowners Ass'n.*, 2003 MT 137, ¶ 17, 316 Mont. 146, 69 P.3d 225; *Olympic Coast Inv., Inc. v. Wright*, 2005 MT 4, ¶ 26, 325 Mont. 307, 105 P.3d 743). "The doctrines deter plaintiffs from splitting a single cause of action into more than one lawsuit, thereby conserving judicial resources and encouraging reliance on adjudication by preventing inconsistent judgments." *Baltrusch*, ¶ 15 (citing *Smith v. Schweigert*, 241 Mont. 54, 59, 785 P.2d 195, 198 (1990); *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Collateral estoppel bars relitigation of an issue if four elements are met: (1) an identical issue raised was previously decided in a prior adjudication; (2) a final judgment on the merits was issued in the prior adjudication; (3) the party against whom collateral

6

estoppel is asserted was a party or in privity with a party in the prior adjudication; and (4) the party against whom issue preclusion is asserted was afforded a full and fair opportunity to litigate any issues that may be barred. *Baltrusch*, ¶ 18.

¶12 Brishkas' appeal is self-limited to a challenge only of the first element, issue identity, contending it has not been satisfied. Accordingly, we need only address whether Brishkas raise an identical issue in this matter that was previously raised and decided in DV-16-618. To satisfy issue identity, the parties must have litigated the "identical issue" or "precise question" in the prior action. *Estate of Watkins v. Hedman, Hileman & Lacosta*, 2004 MT 143, ¶ 33, 321 Mont. 419, 91 P.3d 1264. We compare the pleadings, evidence, and circumstances surrounding the two actions to determine whether the issues decided in the prior adjudication are identical to those presented in the current matter. *Baltrusch*, ¶ 25 (internal citation and quotation marks omitted). To determine whether the issue is substantively identical, a court "does not equate an issue with elements of a cause of action; rather, the bar extends to all questions essential to the judgment and actively determined by a prior valid judgment." *Baltrusch*, ¶ 25 (internal quotation marks omitted). Simply because two cases arise from the same facts or transaction does not necessarily mean each involve identical issues. *Watkins*, ¶ 33. "Nevertheless, consistent with the purpose of promoting judicial economy, we have justified applying collateral estoppel when the 'issues are so intertwined that to decide the issue before it, the district court would have to rehear the precise issue previously decided.'" *Baltrusch*, ¶ 25 (quoting *Martelli v. Anaconda-Deer Lodge County*, 258 Mont. 166, 169, 852 P.2d 579, 581 (1993)).

7

¶13 In Count I of their Complaint, Brishkas assert a claim of inverse condemnation against MDT. They allege that MDT took the Brishkas' property (1) when it designed, constructed, and rebuilt Big Mountain Road, altering the drainage basin to discharge unnatural storm waters upon the Brishkas' property; and (2) when the unnatural storm waters breached the dam of the Briskas' pond, causing it to burst and damage the existing natural drainage below the pond. In Count III of their Complaint, the Brishkas assert a negligence claim. The Brishkas allege MDT owed a duty of reasonable care to the Brishkas when designing, routing, constricting, and reconstructing Big Mountain Road, along and above the Brishkas' property and that MDT breached its duty of care. Proof of proximate cause is an essential element of both inverse condemnation and negligence claims.[2] A claim for inverse condemnation requires proof "(1) that the public improvement was deliberately planned and built; and (2) that, as planned and built, the public improvement proximately caused damage to the plaintiff's property." *Deschner v. State*, 2017 MT 37, ¶ 22, 386 Mont. 342, 390 P.3d 152. A plaintiff asserting a claim for negligence must prove

---

[2] Brishkas rely on our decision in *Stewart v. Liberty Northwest Ins. Corp.*, 2013 MT 107, ¶ 24, 370 Mont. 19, 299 P.3d 820, to argue that "[t]he fact that [a prior action] and the current action both involved questions regarding causation does not mean the issues were identical." *Stewart* is factually distinguishable. The causation issues in *Stewart* arose from Stewart's claims for workers' compensation benefits. The causation issue in the first proceeding specifically dealt with Stewart's potential entitlement to an increased impairment rating given the overall deterioration of her condition, including pain symptoms. *Stewart*, ¶ 24. The subsequent proceeding involved whether Stewart was still suffering from acute pain as a result of her initial work-related injury and whether the insurer continued to be liable for Stewart's pain medication. *Stewart*, ¶ 24. We held that Stewart's entitlement to payment for her pain patches was a different question than her entitlement to an increased impairment rating, thus the causation issue involved in the two claims was distinct. Unlike *Stewart*, however, the causation element in DV-16-618 and the current matter is not distinct. In both instances, the causation issue turns on whether MDT's conduct in reconstructing Big Mountain Road caused the pond failure and the resulting damages.

four essential elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted. *Not Afraid v. State*, 2015 MT 330, ¶ 13, 381 Mont. 454, 362 P.3d 71 (quotation marks omitted) (quoting *Peterson v. Eichhorn*, 2008 MT 250, ¶ 23, 344 Mont. 540, 189 P.3d 615 (citations omitted)).

¶14     On appeal, Brishkas contend that MDT proximately caused the breach of the pond. A careful reading of *Covey* establishes that the Brishkas raised the identical issue in DV-16-618. In DV-16-618, the Brishkas' defense was that MDT caused or contributed to the Coveys' injuries. *Covey*, ¶¶ 63-64. The district court granted Coveys' motion in limine to exclude expert testimony that would apportion any liability to MDT because the Brishkas had failed to disclose in their initial expert witness disclosure any expert to testify regarding the impact of the MDT construction. *Covey*, ¶¶ 9-10, 63, 66. On their appeal in *Covey*, the Brishkas challenged the district court's exclusion of this evidence. This Court not only affirmed the specific exclusion of the expert testimony but also, more broadly, affirmed the district court's exclusion of evidence at trial that MDT was at fault or contributed to the Covey's damages. *Covey*, ¶ 68.

¶15     The analysis of proximate cause under strict liability is identical to that required for a prima facie showing of negligence. *Dvorak v. Metador Serv., Inc.*, 223 Mont. 98, 106, 727 P.2d 1306, 1311 (1986). Similarly, the analysis of proximate cause in the context of an inverse condemnation claim is indistinguishable from the analysis of proximate cause in the context of a negligence claim. *See Thelen v. Billings*, 238 Mont. 82, 86, 776 P.2d 520, 523 (1989) ("Liability, in any cause of action, attaches if the plaintiff can

prove first that defendant's act is a cause in fact of injury and then that the injury is the direct or indirect result, proximately caused by the negligent act."). Here, the element of proximate cause pled in DV-16-618 and the current action is indistinguishable as it relates to the cause of the breach of the pond. The district court's judgment in DV-16-618, that the Brishkas were strictly liable for maintaining a private, 4.5 million-gallon pond on their property, necessarily determined the issue of proximate cause. Brishkas cannot now avoid this legal finding by blaming MDT for causing the same damages under theories of negligence or inverse condemnation. The Brishkas could have advanced the same facts in DV-16-618 by either joining MDT as a party in the litigation or by properly and timely disclosing its expert witness testimony. The failure of a named defendant to join another alleged joint tortfeasor as a third-party defendant in the primary negligence action, when no obstacle prevented doing so, precludes the defendant from later separately seeking contribution from that individual in a subsequent action. *See Metro Aviation, Inc. v. United States*, 2013 MT 193, ¶¶ 19-21, 371 Mont. 64, 305 P.3d 832 (analyzing § 27-1-703, MCA).

¶16 Consequently, we conclude proximate cause of the breached pond was already raised and decided by the district court in DV-16-618 and affirmed by this Court in *Covey*. Therefore, Brishkas' negligence and inverse condemnation claims are precluded as a matter of law, both of which are premised on their allegations that MDT's activities and construction of Big Mountain Road caused the breach of the pond.

¶17 For similar reasons, collateral estoppel prevents Brishkas from raising the issue of damages in the instant proceeding. Brishkas seek compensation for damages related to the

10

breach of the pond, its reconstruction, and any downstream claims against the Brishka Trust. We held in *Covey*, however, that the Brishkas were "strictly liable for *any* damage their pond might cause because it constituted an abnormally dangerous condition." *Covey*, ¶ 32 (emphasis added). Strict liability attaches to the property owner's responsibility for all damages, "even if he acted with reasonable care." *Covey*, ¶ 22 (citations omitted). The damages Brishkas claim in this case resulted from, and are a natural consequence of, the breach of the pond—an event for which the Brishkas have already been adjudged strictly liable pursuant to the district court's judgment in DV-16-618 and this Court's decision in *Covey*. Because Brishkas have not alleged or shown damages other than those resulting from an event for which, as a matter of law, they are strictly liable, the Brishkas cannot prove the damage element of either their negligence or inverse condemnation claims, a consequence that is fatal to both claims. *See Orr v. State*, 2004 MT 354, ¶ 62, 324 Mont. 391, 106 P.3d 100 (discussing accrual of negligence claims, noting that "in actions of negligence, damage is of the very gist and essence of the plaintiff's cause") (internal quotation marks and citation omitted); *see also Deschner*, ¶¶ 19, 22 ("damages that may have been caused by a potential inverse condemnation are indistinct from the damages that may have been caused by any potential negligence . . . ."). Our final judgment in *Covey* entitles MDT to summary judgment on the issue of damages in Brishkas' inverse condemnation and negligence claims. While Brishkas are collaterally estopped from relitigating causation, they are also collaterally estopped, separately and independently, from relitigating the damages element.

11

¶18 Brishkas nonetheless argue that unity of damages between two proceedings provides no basis for issue identity. Brishkas rely on *Lund v. State Compensation Mut. Ins. Fund*, 263 Mont. 346, 351, 868 P.2d 611, 614 (1994), to support their argument. In *Lund*, an injured employee received a determination in district court settling his workers' compensation benefits. Following payment of the benefits, the employee filed a second action to pursue a redetermination of entitlement benefits using "indemnity benefits" under different provisions because he could obtain a better determination of benefits for his injuries. Importantly, in *Lund*, this Court refused to apply collateral estoppel based upon the unique structure of the Workers' Compensation Act and multiple disparate statutory criteria for Lund's claims. *Lund*, 263 Mont. at 349, 868 P.2d at 613 ("Section 39-71-709(3), MCA (1985), provides in pertinent part that '[a] worker who has elected to proceed under 39-71-703 may withdraw his election *at any time* and is entitled to receive indemnity benefits under 39-71-705 through 39-71-708 . . . .") (Emphasis added.) This Court affirmed the lower court's ruling that collateral estoppel did not apply because the issues surrounding the statutory theories of permanent partial disability benefits and indemnity benefits were not identical. *Lund*, 263 Mont. at 351, 868 P.2d at 614. Thus, the injured employee could recover under either benefit code. The Court further concluded the subsequent proceeding was not estopped because the statutes upon which these disparate claims were brought specifically allowed the separate claims. Brishkas' claims are different from those pursued in *Lund*. Although Brishkas' inverse condemnation claim involves additional elements, strict liability, negligence, and inverse condemnation share a

12

common causation element, the proof of which is identical for all claims. Further, the plain language under these claims do not specifically allow subsequent, separate claims.

¶19 Brishkas also contend the District Court concluded issue identity was satisfied because of common evidence between the actions. They maintain the District Court, as part of its explanation that all issues were the same between the two matters, expressly based its decision on the fact that the expert witness testimony the Brishkas intended to present in the current matter was the same evidence they intended to offer in *Covey*. Brishkas cite *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 71, 345 Mont. 12, 192 P.3d 186, for the proposition that "where the claims and issues raised in consecutive suits are different, the subsequent use of evidence that was relevant in the first suit does not constitute relitigation." Brishkas maintain that "the fact that each action arises from the same transaction [facts] does not mean that each involve the same issues." *Watkins*, ¶ 33. Brishkas statements of the law are correct. However, the District Court did not "expressly base its decision" on this fact. To the contrary, the court noted the common evidence in support of its conclusion that the identical issue of proximate cause had been raised and resolved in DV-16-618. Though a court may not rely *entirely* on the sameness of the evidence or that two actions arise from the same transaction or facts, a court is permitted to consider such similarities as a factor in its analysis. The court was permitted to compare the pleadings, evidence and circumstances surrounding the two cases in reaching its conclusion, and we do not conclude that the court based its entire decision on this fact.

13

¶20    As Brishkas' claims for inverse condemnation and negligence fail as a matter of law, there is no basis for the Brishkas' claim for attorney fees and costs pursuant to §§ 70-30-305 and -306, MCA, allowing for an award of attorney fees and costs to the prevailing party in an appeal of a condemnation.  We affirm the District Court's decision that, as a matter of law, MDT is entitled to summary judgment on the Brishkas' claim for attorney fees and costs because the predicate inverse condemnation and negligence claims fail.

¶21    Brishkas also argue on appeal that collateral estoppel does not preclude their inverse condemnation claim because they have a constitutional right to reimbursement for a government taking under Article II, Section 29, of the Montana Constitution.  This argument conflates claims with issues.  A litigant cannot avoid collateral estoppel simply by reframing the same issues or raising new arguments.  *Baltrusch*, ¶ 25.  A new argument is not necessarily a new issue.

> If a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.

*Baltrusch*, ¶ 25 (emphasis in original) (internal quotation marks omitted) (quoting *Haines*, 265 Mont. at 288-89, 876 P.2d at 636-37).  The Brishkas' inverse condemnation claim in this matter is simply a new legal theory for the same issue litigated and adjudicated in DV-16-618.  The Brishkas cannot avoid being collaterally estoppel by relabeling the breach of the pond as a taking by MDT.

14

¶22 Brishkas further argue that proof of negligence is not required to recover under inverse condemnation,[3] and the criteria for recovery under *Covey* and the current matter examine different issues resulting in the same damages. However, to recover under their inverse condemnation claim, Brishkas would have to relitigate the elements of causation and damages, as inverse condemnation requires proof of both. Although Brishkas' inverse condemnation claim involves additional elements, the identity issue analysis is not affected. The District Court's ruling does not negate Brishkas' right to just compensation under Article II, Section 29, as they argue. Rather, the District Court correctly concluded Brishkas are precluded from establishing necessary elements of the claim, namely proximate cause and damages. Contrary to Brishkas' argument is the express requirement that an inverse condemnation claimant prove causation and damages. *Deschner*, ¶¶ 19, 22. Because both issues were previously raised in DV-16-618, and the district court issued a final judgment on both issues, we conclude the Brishkas cannot now reassert the issues under a claim of inverse condemnation.

---

[3] Brishkas rely on *Deschner*, ¶ 16, to argue that Montana's case law does not require a showing of negligence or a theory of negligence when faced with deliberate or intentional acts. They further argue that "[c]ontrary to the District Court's conclusion, nothing in this Court's determinations that both analyses require determination of factual cause provided a basis for wholesale adoption of tort theory, i.e. strict liability, in the analysis." We note that the plaintiffs in *Deschner* asserted claims for inverse condemnation and negligence in their action, but none of the elements of either claim had been previously adjudicated, unlike the elements of causation and damages in this case. Further, our decision in *Deschner* articulated that in the context of the plaintiffs' negligence claim, "causation of damages was a contested issue that was common to both the negligence and inverse condemnation claims. The damages that may have been caused by a potential inverse condemnation are indistinct from the damages that may have been caused by any potential negligence" by the State.

¶23 As a final argument, Brishkas maintain there is a genuine issue of material fact precluding granting summary judgment because the parties dispute whether MDT's reconstruction of Big Mountain Road caused the breach of the pond. Consistent with our forgoing analysis, we conclude this argument must fail.

## CONCLUSION

¶24 The District Court correctly concluded that all elements of collateral estoppel were satisfied. Brishkas' inverse condemnation, negligence, and attorney fees and costs claims are therefore precluded. Accordingly, MDT is entitled to summary judgment as a matter of law.

¶25 Affirmed.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE